666 A.2d 1269

**Timothy Allen BOYER**

v.

**STATE of Maryland.**

**No. 2033, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Oct. 16, 1995.

Reconsideration Denied Nov. 24, 1995.

Steven D. Kupferberg (Magdalena A. Bell, on the brief), Rockville, for appellant.

Gary E. Bair, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, David P. Kennedy, Assistant Attorney General, Baltimore, and Leonard C. Collins, Jr., State's

Attorney for Charles County, LaPlata, on the brief), for appellee.

Argued before BISHOP, ALPERT,* and SALMON, JJ.

BISHOP, Judge.

A grand jury sitting in the Circuit Court for Charles County issued a nine-count indictment, charging appellant, Timothy Allen Boyer, with two counts of assault and battery, four counts of reckless endangerment, and single counts of assault with intent to avoid lawful apprehension, resisting arrest, and possession of a machine gun for aggressive purposes. The circuit court denied appellant's motion to sever the count involving appellant's alleged assault and battery upon his wife; however, at the end of the State's case, the court granted appellant's motion for judgment of acquittal with respect to that count. A jury found appellant guilty of possession of a machine gun for aggressive purposes and four counts of reckless endangerment. Appellant filed a timely motion for new trial, and, after a hearing, the trial court granted appellant's motion with respect to the count involving the reckless endangerment of appellant's wife. As to the remaining counts, the court denied appellant's motion.

### Issues

Appellant raises five issues, which we rephrase:

I. Was the evidence sufficient to sustain appellant's conviction for reckless endangerment?

II. Is Md.Ann.Code, art. 27 § 374 (1994) unconstitutional?

III. Was the evidence sufficient to sustain appellant's conviction for aggressive use of a machine gun pursuant to Md.Ann.Code, art. 27 § 374?

IV. Did the trial court err when it refused to instruct the jury that Md.Ann.Code, art. 27 § 374 is a specific intent

---

* Alpert, J., participated in the argument and decision in this case but retired from the court prior to the filing of the opinion.

offense, and to define, for the jury, the term "aggressive use," as used in § 374?

V. Did the trial court's denial of appellant's pre-trial motion to sever prejudice appellant?

## *FACTS*

A domestic argument occurred between appellant and his wife, Joni Boyer, over the couple's impending separation and their daughter's custody arrangements. Following the argument, Mrs. Boyer went to a nearby gas station and telephoned the Charles County Sheriff's Department. Officer Ralph Aquaviva met Mrs. Boyer at the gas station, where she showed him a barely visible cut on her hand and informed him that appellant had assaulted her. Mrs. Boyer also informed Officer Aquaviva that appellant was intoxicated and owned several guns.

Although Mrs. Boyer's injury was minor, Officer Aquaviva and Officer Gary Holt accompanied Mrs. Boyer to the couple's home to investigate the dispute. When they entered the couple's driveway, the officers triggered an alarm system, which signalled their arrival to appellant, who was inside "playing with" his licensed and registered MAC 11, 9 mm machine gun. Upon hearing the alarm, appellant put the gun under the bedsheet and laid down to watch television with his eleven-month old daughter. Mrs. Boyer directed the officers to the bedroom, where they found appellant lying in bed, partially under the bedsheet. Officer Aquaviva testified that he smelled alcohol and noticed that appellant's eyes were bloodshot; however, Officer Aquaviva also testified that the scene was "peaceful and quiet."

The officers refused appellant's request that they leave his home. When questioned by Officer Aquaviva, appellant refused to discuss his wife's assault allegations. During his conversation with appellant, Officer Aquaviva "observed [appellant's] right hand under the covers and . . . felt like [he] was in danger." Consequently, Officer Aquaviva ordered appellant to remove his hand from under the bedsheet, and,

when appellant refused, Officer Aquaviva pulled the bedsheet away and discovered the gun, which he seized and handed to Officer Holt, who disengaged it. Officer Aquaviva also testified that appellant's gun safe, located in the couple's bedroom, was open and contained various weapons.

The officers conceded that appellant made no physical contact with the gun in their presence, and they testified that appellant made no aggressive or offensive gestures with the gun. Officer Aquaviva did testify, however, that, when he pulled back the bedsheet, the machine gun was pointed directly at him. The machine gun was loaded, with its "safety" in the "fire" position, its setting on "SMG" (sub-machine gun), and a round of ammunition in the chamber. After appellant's arrest, the officers found a second loaded magazine for the machine gun underneath appellant's pillow.

Appellant testified that he was a gun collector and that, when the officers arrived at his house, he was only "playing with" his machine gun. Appellant conceded that he refused to relinquish custody of his daughter to the officers, but asserted that he calmly asked the officers to leave his house. Appellant denied that he was uncooperative with the officers and he asserted that he "threw the gun under [his] pillow" because he "didn't want to have a gun in [his] hand while somebody walked into the house." Appellant maintained that, while the officers were in his bedroom, he made a telephone call to his mother-in-law, during which, one of the officers "stuck" something in his face, causing him "to flinch." According to appellant, "[b]efore [he] knew it, [his] daughter was taken from [his] right arm [and h]e was spun around head first into [his] covers."

## DISCUSSION

### I. Reckless Endangerment

Appellant asserts that the evidence was insufficient to support his convictions for reckless endangerment of his daughter, Officer Aquaviva, and Officer Holt. He insists that he engaged in no conduct that rose to the level of "substantial

risk of death or serious injury," as contemplated by Maryland's "reckless endangerment" statute, now codified as Md. Ann.Code, art. 27 § 120 (1992) (hereinafter "§ 120"). Section 120 provides, in pertinent part, that "[a]ny person who recklessly engages in conduct that creates a substantial risk of death or serious physical injury to another person is guilty of the misdemeanor of reckless endangerment...." *Id.* According to appellant, neither his placement of the machine gun under the bedsheet before the officers entered his bedroom nor the presence of the gun under the bedsheet while the officers were present in his bedroom amounts to conduct sufficient to sustain his convictions under § 120.

"Maryland's reckless endangerment statute is aimed at deterring the commission of potentially harmful conduct before an injury or death occurs. As a consequence, a defendant may be guilty of reckless endangerment even where he has caused no injury...." *State v. Albrecht,* 336 Md. 475, 500–01, 649 A.2d 336 (1994). In *Minor v. State,* 85 Md.App. 305, 583 A.2d 1102 (1991), *aff'd,* 326 Md. 436, 605 A.2d 138 (1992), this Court concluded that, "[t]o commit the crime of reckless endangerment ..., a defendant need not intentionally cause a result or know that his conduct is substantially certain to cause a result." *Id.* at 316, 583 A.2d 1102. The Court of Appeals, affirming our decision, further stated that "whether the accused's conduct, which created the substantial risk, was reckless under § 120(a) is a matter for objective determination, to be made by the trier of fact from all the evidentiary circumstances in the case." *Id.* at 443, 605 A.2d 138. Accordingly, "guilt under the statute does not depend upon whether the accused intended that his reckless conduct create a substantial risk of death or serious injury to another[;]" rather, the trier of fact must determine whether the accused's conduct, when viewed objectively, "was so reckless as to constitute a gross departure from the standard of conduct that a law-abiding person would observe, ... thereby creat[ing] the substantial risk that the statute was designed to punish." *Id.*

Responding to the appellant's sufficiency of the evidence challenges in *Minor v. State,* the Court of Appeals found the evidence to be sufficient, and summarized:

> [The appellant] handed the loaded shotgun to his brother with the safety off and ready to fire; the two men had consumed three or four fifths of wine and the appellant admitted that he was "high off the drinks, cocaine and heroin"; the appellant's brother indicated an intention to put the gun to his head and pull the trigger; and the appellant, in giving the shotgun to his brother, dared him to do so and gave him the gun in order to "call his bluff."

*Id.* at 443, 605 A.2d 138. Although appellant argued that his involvement in his brother's death was limited to "handing [his brother] a loaded gun and, in effect, daring him to use it on himself[,]" *Minor,* 85 Md.App. at 313, 583 A.2d 1102, the Court of Appeals held that, "[i]n light of the evidence . . . [,] the trial judge did not err in finding the appellant guilty of the offense of reckless endangerment[,]" *Minor,* 326 Md. at 444, 605 A.2d 138, because whether the appellant's conduct was reckless under § 120(a) was a matter for objective determination.

"[W]hen an appellate court is called upon to determine whether sufficient evidence exists to sustain a criminal conviction, it is not the function or duty of the appellate court to undertake a review of the record that would amount to, in essence, a retrial of the case." *Albrecht,* 336 Md. at 478, 649 A.2d 336. Stated succinctly,

> when a sufficiency challenge is made, the reviewing court is not to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt[;]" rather, the duty of the appellate court is only to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*Id.* at 479, 649 A.2d 336 (quoting *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)).

■ In the case *sub judice,* the jury convicted appellant of reckless endangerment based on the following evidence: (1) appellant had been drinking and allegedly assaulted his wife; (2) when appellant heard the driveway alarm, he placed, underneath his bedsheet, a loaded, sub-machine gun with the safety off, ready to fire; (3) appellant refused to cooperate with the officers and was visibly agitated while the officers were in his room; (4) appellant's eleven-month old daughter was in bed with appellant, just inches away from the loaded machine gun; (5) when Officer Aquaviva pulled appellant's bedsheet back, the submachine gun was pointed at him; and (6) Officer Aquaviva found a loaded magazine clip underneath appellant's pillow.

Appellant argues that his placement of the gun under the sheets "was a finite act that had a beginning and an end, happening only once," and that "the mere *presence* of [his] gun under the bed sheets, without more, does not rise to the requisite level of conduct required for a showing of reckless endangerment." Appellant claims that he never made physical contact with the gun while the officers were in his bedroom and, therefore, he never engaged in any reckless conduct.

In *Minor,* the Court of Appeals held that the appellant's act of handing a loaded shotgun to his brother and "daring" his brother to pull the trigger amounted to reckless conduct. The Court believed that the appellant did not intend for his brother to get hurt and only gave the gun to his brother to "call his bluff[;]" however, the Court concluded that, when viewed objectively, a reasonable trier of fact could have determined that appellant behaved recklessly.

"In reviewing the sufficiency of the evidence presented on the charges of ... reckless endangerment, we emphasize that we are not sitting as the trier of fact and, therefore, we are not to ask ourselves whether we would convict based upon the evidence presented." *Albrecht,* 336 Md. at 502, 649 A.2d 336. We must "only determine whether *any* rational trier of fact could have found [appellant] guilty of [reckless endangerment] based upon the evidence presented at trial." *Id.* Although

appellant may not have had physical contact with the machine gun hidden beneath his bedsheet, it was in his possession and control. Also, the evidence demonstrated that, while the officers were in the bedroom, the machine gun was loaded, pointed at Officer Aquaviva, and its safety was off. Appellant and his eleven-month old daughter were inches away from the gun and appellant had his hand under the sheet, next to the gun. Like the appellant in *Minor*, appellant arguably did not intend to harm the officers or his daughter; however, as in *Minor*, we hold that, viewing the evidence in a light most favorable to the State, a reasonable trier of fact could have reasonably concluded that appellant's conduct, when viewed objectively, was so reckless that "[it] constitute[d] a gross departure from the standard of conduct that a law-abiding person would observe and ... create[d] the substantial risk that [§ 120] was designed to punish." *Albrecht*, 336 Md. at 501, 649 A.2d 336 (quoting *Minor*, 326 Md. at 443, 605 A.2d 138).

## II. Constitutionality of § 374

Appellant challenges the constitutionality of Md.Ann.Code, art. 27 §§ 374, 375 & 377, which cover the use and possession of a machine gun. Appellant's argument is twofold: (1) appellant maintains that § 374 is void for vagueness and (2) appellant maintains that § 375 applies an impermissible presumption.

### A. § 374

"[T]he vagueness doctrine does not require absolute precision or perfection." *Williams v. State*, 329 Md. 1, 13, 616 A.2d 1275 (1992). Rather, the doctrine requires "that a penal statute 'be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties.'" *Id.* at 8, 616 A.2d 1275 (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127–28, 70 L.Ed. 322 (1926)). The touchstone in determining whether a statute passes constitutional muster under the fourteenth amendment's guarantee of procedural due process is "whether

persons 'of common intelligence must necessarily guess at [the statute's] meaning.' " *Id.* (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973)). Additionally, for a penal statute to satisfy the vagueness doctrine, the statute must "provide 'legally fixed standards and adequate guidelines for police, judicial officers, triers of fact and others whose obligation it is to enforce, apply and administer the penal laws.' " *Id.* at 8–9, 616 A.2d 1275 (quoting *Bowers v. State,* 283 Md. 115, 121, 389 A.2d 341 (1978)). *See also Kolender v. Lawson,* 461 U.S. 352, 358, 103 S.Ct. 1855, 1858–59, 75 L.Ed.2d 903 (1983) (holding that, to satisfy the void-for-vagueness doctrine, it is imperative that a penal statute avoid arbitrary enforcement). Appellant *sub judice* contends that § 374, which criminalizes the possession or use of a machine gun for aggressive or offensive purposes, is void for vagueness because it "fail[s] to put a criminal defendant on notice as to what conduct will constitute the aggressive or offensive use of a machine gun." *See* Md.Ann.Code, art. 27 § 374 (1992).

"The Supreme Court 'has long recognized that the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea.*' " *Williams,* 329 Md. at 9, 616 A.2d 1275 (quoting *Colautti v. Franklin,* 439 U.S. 379, 395, 99 S.Ct. 675, 685–86, 58 L.Ed.2d 596 (1979)). When the statute requires a specific intent to do a prohibited act, the statute is relieved " 'of the objection that it punishes without warning an offense of which the accused was unaware.' " *Id.* (quoting *Screws v. United States,* 325 U.S. 91, 102, 65 S.Ct. 1031, 1035–36, 89 L.Ed. 1495 (1945)). In *Williams,* the appellant argued that the Maryland Drug Kingpin Act was void for vagueness because "the average person [could] not ascertain the upper limit of one's conduct before becoming a drug kingpin, and that the statute invite[d] law enforcement officials to wield its enhanced penalties selectively." *Id.* According to the appellant, "it [was] unclear who qualifie[d] as an 'organizer, supervisor, financier, or manager' in a drug conspiracy." *Id.* The Court of Appeals, however, upheld the act as constitutional, stating:

> While the Maryland Drug Kingpin Act does not expressly require a specific intent to "wilfully" or "purposefully" occupy a position as an "organizer, supervisor, financier, or manager" in a drug conspiracy, the statute does, of course, impliedly necessitate a deliberate foray into some threshold of criminal drug involvement before one can reach the brink of kingpin status. Thus, in the same manner as specific intent statutes, the drug kingpin statute can in no way be "a trap for those who act in good faith." *United States v. Ragen,* 314 U.S. 513, 524 [62 S.Ct. 374, 379, 86 L.Ed. 383] ... (1942). *See also Boyce Motor Lines v. United States,* 342 U.S. 337, 340 [72 S.Ct. 329, 330–31, 96 L.Ed. 367] ... (1952) (It is not "unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.")

*Id.* at 10, 616 A.2d 1275. The Court also emphasized that, when the meaning of a statute's questionable terms "comport with everyday understandings of the words they define, the ... statute employs language accessible to persons of common intelligence[, who] need not guess at the statute's meaning." *Id.* at 11, 616 A.2d 1275.

Section 374 expressly punishes those who specifically intend to use or possess a machine gun for an aggressive or offensive purpose. Accordingly, § 374 "can in no way be 'a trap for those who act in good faith'" *Id.* at 10, 616 A.2d 1275. (quoting *United States v. Ragen,* 314 U.S. 513, 524, 62 S.Ct. 374, 378–79, 86 L.Ed. 383 (1942)).

■ Furthermore, the use of the words "aggressive" and "offensive" as employed in § 374 are not technical terms. They are common words with well understood meanings. Webster's Tenth New Collegiate Dictionary defines "aggressive" as "tending toward or practicing aggression[;] marked by combative- readiness...." Webster's Tenth New Collegiate Dictionary 23 (1993). The term "offensive" means "making an attack: AGGRESSIVE ... of, relating to, or designed for attack...." *Id.* at 806. "[A] statute does not become unconstitutionally vague merely because it may not be perfectly

clear at the margins [what conduct] qualifies as ['aggressive' or 'offensive']." *Williams,* 329 Md. at 11–12, 616 A.2d 1275. We hold that § 374 plainly provides fair warning of serious consequences to persons who would possess or use a machine gun for a purpose "related to attack" or "marked by combative readiness."

## B. § 375

■ Section 375 lists certain circumstances under which the machine gun possession or use prohibited by § 374 shall be presumed:

(a) When the machine gun is on premises not owned or rented, for bona fide permanent residence or business occupancy, by the person in whose possession the machine gun may be found; or

(b) When in the possession of, or used by, an unnaturalized foreign-born person, or a person who has been convicted of a crime of violence in any court of record, state or federal, of the United States of America, its territories or insular possessions; or

(c) When the machine gun is of the kind described in § 379 and has not been registered as in said section required; or

(d) When empty or loaded shells which have been used or are susceptible of being used in the machine gun are found in the immediate vicinity thereof.

According to appellant, because no rational connection exists between an "aggressive purpose" and "the mere *existence* of empty or loaded shells in the vicinity of the machine gun," § 375 creates an impermissible statutory presumption.

To determine the validity of a statutory presumption, the United States Supreme Court, in *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), provided the following test:

Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of

the one from proof of the other is arbitrary because of lack of connection between the two in common experience. This is not to say that a valid presumption may not be created upon a view of relation broader than [w]hat a jury might take in a specific case. But where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them it is not competent for the legislature to create it as a rule governing the procedure of courts.

*Id.* at 467–68, 63 S.Ct. at 1245. Stated another way, "a criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." *Leary v. United States,* 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57 (1969).

The constitutionality of § 375 depends on whether it can be said with substantial assurance that it is more likely than not that a person possesses a machine gun for an aggressive or offensive purpose when empty or loaded machine gun shells are found in its immediate vicinity. According to the State, that constitutional inquiry is irrelevant to the case *sub judice* because the trial court instructed the jury that it could "infer," rather than "presume," an aggressive or offensive purpose from the presence of ammunition found near the machine gun in appellant's presence. We disagree that appellant's constitutional inquiry is irrelevant.

■ Appellant was charged and convicted under § 375. The issue of the constitutionality of § 375 does not evaporate because the trial court instructed the jury that "[it] might but need not conclude that the purpose was aggressive ... when empty or loaded shells which have been used or are susceptible of being used in the machine gun are found in the vicinity thereof." We do agree, however, that we must limit our constitutional analysis of § 375 to subsection (d) because the trial court explicitly instructed the jury that subsections (a), (b), and (c) were not relevant to determining appellant's guilt

or innocence. "It has long been settled that when a case is submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside." *Leary,* 395 U.S. at 31–2, 89 S.Ct. at 1545–46. Because the trial court submitted the machine gun possession count to the jury with instructions that only subsection (d) applied, we need not address appellant's argument that § 375(b) is unconstitutional.

Appellant argued that § 375(d) is over-inclusive because "an individual cleaning and handling his machine gun, after lawfully using the same, would be subject to the presumption of aggressive use by the mere existence of empty shell casings near the weapon, regardless of who or what else [was] present at the moment!" We disagree. Section 377, of which the trial court apprised the jury, explicitly states that "[n]othing contained in th[e] subtitle shall prohibit or interfere with . . . [t]he possession of a machine gun for a purpose manifestly not aggressive or offensive." Md.Ann.Code, art. 27 § 377(3) (1992). Therefore, under § 377(3), the use or handling of a machine gun in appellant's example would be exempt from the penalties prescribed in § 374.

Appellant further asserts that the evidence adduced at his trial demonstrates the "irrationality" of the § 375(d) presumption because, although the testimony revealed that he never "physically laid his hands on the gun, the mere fact that it was loaded placed upon him the burden of presenting evidence to rebut the presumption that he used the weapon aggressively." We stress that § 374 makes criminal the "[p]ossession *or* use of a machine gun for [an] offensive or aggressive purpose . . . ." Md.Ann.Code, art. 27 § 374 (1992) (emphasis added). The use of the disjunctive indicates that the Legislature made it a crime simply to *possess* a machine gun for an offensive or aggressive purpose; to sustain a conviction under § 374, the State does not have to prove that the accused also *used* the machine gun for an aggressive purpose. Reading § 375(d) in conjunction with § 374, we hold that a rational nexus exists between the possession of a machine gun for an aggressive purpose and the presence of live or spent ammunition in the

immediate vicinity of the machine gun. When a police officer encounters a person in possession of a machine gun and there is live or spent ammunition found in the immediate vicinity thereof, it is more likely than not that the person possesses the machine gun for a purpose "related to attack" or "marked by combative readiness." *i.e.,* "the inference of the one from proof of the other is [not] arbitrary." *Tot,* 319 U.S. at 467, 63 S.Ct. at 1245.

### III. Insufficiency of the Evidence

■ Appellant argues that, notwithstanding the issue of constitutionality, a reasonable jury could not have convicted him for use of a machine gun for an aggressive or offensive purpose because "the State's own witnesses unequivocally testified that: (1) [he] never made use of his weapon while in the Officer's [sic] presence; and (2) never used the weapon aggressively and/or offensively towards them." As we stated *supra,* § 374 criminalizes the "use" *or* "possession" of a machine gun for aggressive or offensive purposes. Accordingly, when determining the accused's guilt or innocence under § 374, the trier of fact need only resolve whether the accused possessed the machine gun for an aggressive or offensive purpose.

In the case *sub judice,* the officers testified that appellant appeared to have been drinking, that appellant concealed the machine gun underneath his bedsheet, that the machine gun was pointed toward Officer Aquaviva, that the machine gun was loaded and its safety was off, that appellant concealed a loaded magazine clip under his pillow, and that the appellant and his wife had been engaged in a domestic dispute. We hold that, from that evidence, a reasonable trier of fact could have concluded that appellant's conduct was prohibited under § 374.

### IV. Jury Instructions

#### A. Failure To Instruct That § 374
#### Requires A Specific Intent

■ The trial court instructed the jury that "[t]here [were] only two specific intent crimes with which [they were] dealing

. . ., assault with intent to avoid lawful apprehension, and resisting arrest." Regarding the charge that appellant possessed a machine gun for an aggressive or offensive purpose, the trial court instructed the jury as follows:

As was mentioned in an exchange earlier today, [appellant] is not charged with unlawfully possessing a machine gun, as such. It is not unlawful to possess a machine gun, as such. In fact, there is evidence before you, this machine gun was owned and possessed in general terms at the home by [appellant] lawfully. That is to say, with the benefit of a license. The charge here is one of again statutory creation. Section 374 of Article 27, says, possession or use of a machine gun for offensive or aggressive purpose is hereby declared to be a crime[ ] and there is some definition language here.

First, a machine gun, as used in this statute, means a weapon of any description, by whatever name known, loaded or unloaded, from which more than one shot or bullet may be automatically discharged from a magazine, by a single function of the firing device.

There is a provision of this statute that talks about several, specifically four circumstances that could be viewed as amounting to an aggressive purpose from which the finder of fact might but need not conclude that the purpose was aggressive, and the one relevant to the evidence presented in this case—the others are not relevant—is when empty or loaded shells which have been used or susceptible of being used are found in the immediate vicinity thereof. Again, there is, as you might expect, a section of that statute that lists some exceptions, and we will give you examples, of the exceptions that are set out there. One of them is not helpful to discuss. The other two might be.

One is, the possession of a machine gun for scientific purpose, or possession of a machine gun not used as a weapon or curiosity, that is a keepsake, that is okay.

Next, the possession of a machine gun for a purpose that is manifestly not aggressive or offensive. That is an exception, and it goes on talking about the registration scheme

and what not, which again is not something with which we are concerned in this case.

Appellant's counsel requested that the trial court reinstruct the jury that, in order to convict appellant under § 374, the State had to prove, beyond a reasonable doubt, that appellant specifically intended to possess the machine gun for an aggressive or offensive purpose. Noting his objection, appellant's counsel stated:

> Next, I believe that possession of a machine gun for aggressive purposes is a specific intent crime. Possession of a machine gun is not a specific intent crime. The court described it as not. I suggest to the court, as with an assault with intent to do something, possessing something for a particular purpose is a specific intent crime. I am asking the court to give a curative instruction as to that particular count, as to it being a specific intent crime.

The trial court denied appellant's counsel's request.

Appellant contends that the instruction failed to convey to the jury the State's burden of proof. We have stated that, "[w]hen a requested instruction correctly states a point of law that is relevant to the facts of a case, the failure to give that instruction is error, unless the point has been fairly covered by the instructions actually given." *Brooks v. State,* 104 Md.App. 203, 211, 655 A.2d 1311 (1995). In the case *sub judice,* the trial court explicitly advised the jury that "[i]t [was] not unlawful [per se] to possess a machine gun," and that there was evidence that appellant lawfully owned and possessed his machine gun. The trial court explained that § 374 criminalized "[the] possession or use of a machine gun for offensive or aggressive purpose[s]." Additionally, the trial court emphasized that possession of a machine gun as "a keepsake" or "for a purpose that is manifestly not aggressive or offensive[,] does not constitute a violation of § 374.

"Jury instructions must be viewed as a whole, and not in isolation." *Brooks,* 104 Md.App. at 213, 655 A.2d 1311. Reading the trial court's instruction as a whole, it is clear that appellant could not be convicted under § 374 unless the State

proved that appellant specifically intended to possess or use the machine gun for an aggressive or offensive purpose. Moreover, the trial court warned the jury that it could not punish appellant for merely possessing the machine gun as "a keepsake," or for a "non-aggressive" or "non-offensive" purpose. Accordingly, we hold that "[a]ppellant's requested instruction regarding [specific intent] would have added nothing to the court's instruction regarding the prosecution's burden of proof." *Id.*

### B. Failure To Define "Offensive"

Appellant also argues that, although the trial court defined the term "aggressive," it failed to define, adequately, the term "offensive," as used in § 374. The court, appellant argues, should have instructed the jury that the State had "to prove beyond a reasonable doubt that [the possession was] both offensive and aggressive." Appellant's counsel requested the court "to give the definition of offensive, as opposed to aggressive, and to what the meaning is." The court responded by reinstructing the jury as follows:

> When talking about the language in the machine gun statute, we are at a disadvantage because there is doggone little as far as we know, no Maryland law that describes it or defines the terms used in that statute with any more precision than I have already given you. The statute does talk about and condemn the possession or use of a machine gun for an offensive or aggressive purpose. It attempts to give examples to which I alluded with regard to what is meant by aggressive. It does not help us out at all with regard to what is meant by offensive. At the very least, offensive, in the context used, means proactive as distinct from reactive behavior, and it is used in that sense as distinct from distasteful or malodorous or simply disagreeable behavior. At least to some extent, the terms aggressive and offensive as used in that statute are synonymous, at least to some extent.

Appellant's counsel noted no further objection to the trial court's definition of the term "offensive," and, consequently,

the trial court instructed the prosecution to begin its closing argument.

The issue of whether the trial court adequately instructed the jury as to the meaning of "offensive" has not been preserved for our review. Appellant argues that, under the circumstances, a renewal of the objection would have been "futile" or "useless." *See Gore v. State*, 309 Md. 203, 209, 522 A.2d 1338 (1987) (explaining that Rule 4–325(e) requires a party (1) to object to a jury instruction promptly on the record after the trial court instructs the jury; and (2) to state distinctly the matter to which the party objects and the ground for the objection). Appellant asked the trial court to define, for the jury, the term "offensive," as used in § 374. The trial court complied with that request. By failing to note an objection before the jury retired, appellant indicated his approval of the trial court's definition. Accordingly, appellant waived his right to challenge the adequacy of that definition on appeal.

 Assuming, *arguendo*, that the issue were preserved, we, nevertheless, would hold that the trial court did not err when it defined the term "offensive" for the jury. Appellant argues that "the trial court's re-instruction did nothing to clarify the meaning of offensive use for the jury." We disagree.

The trial court correctly informed the jury that "at the very least, offensive, in the context used, . . . means proactive as distinct from reactive behavior, and it is used in that sense as distinct from distasteful or malodorous or simply disagreeable behavior." Appellant asserts that the terms "aggressive" and "offensive" are not synonymous because the terms are joined by the disjunctive "or;" however, appellant's requested dictionary definition of the term "offensive" reveals that the two terms are synonymous. *See* Webster's Tenth Collegiate Dictionary 23, 806 (1993) (defining "aggressive" as "tending toward or practicing aggression[;] marked by combative readiness . . ." and defining "offensive" as "making an attack: AGGRESSIVE . . . of, relating to, or designed for at-

tack. . . ."). We agree with appellant that terms in a statute should be interpreted to avoid surplusage and redundancy in our statutory language. As used in § 374, however, the terms "offensive" and "aggressive" must be interpreted as synonymous, "at least to some extent." We agree with the State that "[t]he statute, by its context, obviously intends "offensive" to have its ordinary meaning relating to attacking . . ., and not its other ordinary meaning relating to disagreeable. . . ."

### V. Motion to Sever

 Appellant argues that the trial court erred when it denied his motion to sever the charge of spousal assault from the other charges in his case. Maryland Rule 4–253(c) provides that,

> [i]f it appears that any party will be prejudiced by the joinder for trial of counts, charging documents or defendants, the court may, upon its own initiative or the motion of any party, order separate trials of counts, charging documents or defendants, or grant any other relief justice requires.

Appellant asserts that the joinder of the spousal abuse charge with the other charges prejudiced him because the jury heard allegations that he was "a bad person, one who was prone to violence, drinking and abusive behavior against his wife." According to appellant, the evidence admitted pertaining to the spousal abuse charge "may well have tarnished him, in the jury's eyes, as a hostile and aggressive 'time bomb' with a ready propensity to use a gun offensively." *Wieland v. State,* 101 Md.App. 1, 21, 643 A.2d 446 (1994). In *Kearney v. State,* 86 Md.App. 247, 586 A.2d 746, *cert. denied,* 323 Md. 34, 591 A.2d 250 (1991), we explained that the joinder of similar offenses may prejudice the defendant in three respects:

> First, [the defendant] may become embarrassed, or confounded in presenting separate defenses. . . . Secondly, the jury may cumulate the evidence of the various crimes charged and find guilt when, if the offenses are considered separately, it would not do so. At the very least, the joinder of multiple charges may produce a latent hostility,

which by itself may cause prejudice to the defendant's case. Thirdly, the jury may use the evidence of one of the crimes charged, or a connected group of them, to infer criminal disposition on the part of the defendant from which he may also be found guilty of other crimes charged.

*Id.* at 252, 586 A.2d 746 (quoting *McKnight v. State,* 280 Md. 604, 609, 375 A.2d 551 (1977)).

"In the context of a joinder of offenses, 'where the offenses are joined for trial because they are of a similar character, but the evidence would not be mutually admissible, the prejudicial effect is apt to outweigh the probative value of such evidence.' " *Kearney,* 86 Md.App. at 253, 586 A.2d 746 (quoting *McKnight,* 280 Md. at 610, 375 A.2d 551.) In the case *sub judice,* although evidence of the spousal dispute would be admissible at the trial on the other charges. as tending to establish appellant's motive, intent, absence of mistake, and preparation, the reverse is not true. *See Id.* at 252, 586 A.2d 746. Any evidence of reckless endangerment, resisting arrest, and possession of a machine gun for an aggressive or offensive purpose would be "wholly irrelevant in [appellant's] trial for [spousal assault]." *Id.* at 254, 586 A.2d 746.

Regarding the evidence pertaining to the spousal abuse allegation, we hold that such evidence would have been admissible in a trial on the charges involving reckless endangerment and unlawful possession of a machine gun. Any retrial of the reckless endangerment and machine gun possession charges "would[, therefore,] be identical in every relevant way to the trial actually conducted below. . . ." *Id.* at 255, 586 A.2d 746. We agree with the trial court that,

> it was necessary and appropriate in the trial . . . for the finder of fact to hear evidence by way of providing some explanation or evidence that provided some explanation for the police presence and for the police conduct and at the very least the jury needed to hear about the report the police had gotten with regard to a violent incident with regard to alcohol with regard to weapons and that they

were going to hear that whether the assault and battery charge involving Mrs. Boyer had been filed or not. . . .

With respect to the spousal abuse charge, the trial court granted appellant's motion for acquittal, and therefore, no retrial is necessary.

 Appellant also asserts that the State proceeded in bad faith on the spousal assault charge because it knew, prior to trial, that Mrs. Boyer would assert her spousal privilege. Appellant maintains that the State prejudiced him by calling Mrs. Boyer as a witness and compelling her to assert her spousal privilege in front of the jury. Mrs. Boyer's assertion of her privilege, however, took place out of the presence of the jury. Knowing that Mrs. Boyer intended to assert her privilege, the trial court instructed the State not to refer to the spousal assault charge in its opening statement. The trial court also cautioned the State that it could only question Mrs. Boyer concerning "anything she might have been telling the officers with regard to present conditions as they might encounter them in the house." We agree with the State that its questions regarding the circumstances occurring immediately before Mrs. Boyer and the police officers arrived at the house were not asked in bad faith; the State did not force Mrs. Boyer to assert her privilege on the witness stand.

During the course of Mrs. Boyer's testimony, the State asked Mrs. Boyer whether, on the night in question, she previously had expressed any concerns about appellant. Appellant's counsel objected to the question and the trial court ruled as follows:

> THE COURT: I will allow you to answer that question and overrule the objection, and qualify it. The answer should address only what you said to the police with respect to what they might expect or what you knew to be the situation in the house as you and they were arriving there. The direct examination did not go into things that might have happened earlier that day before you and the police were approaching the house. It talked only about what was going on as you and the cops were entering the house and

what you might have been telling them, concerns you might have expressed.

After Mrs. Boyer informed the State that she did not express any concerns to the police officers about appellant's condition, the State asked Mrs. Boyer whether she told the police officers that she believed appellant was intoxicated. Appellant's counsel objected and the following colloquy ensued:

[APPELLANT'S COUNSEL]: May I have a continuing objection? I don't mean to pop up.

THE COURT: The objection is noted and it is sustained with regard to any report as to what might have been going on before, but it is overruled with regard to anything she might have been telling the officers with regard to present conditions as they might encounter them in the house.

[MRS. BOYER]: I don't understand.

THE COURT: The short answer is you told us Thursday you did not wish to testify with respect to episodes that went on before you and the police met on the road at Hughesville?

[MRS. BOYER]: Right.

THE COURT: It is your privilege not to testify about those matters. You may have come here today and testified about circumstances under which you and the officers entered your home that evening, after the meeting on the side of the road. I will allow the state to question you as [Appellant's counsel] did with regard to circumstances under which you and they came back to the house.

[APPELLANT'S COUNSEL]: May we approach the bench?

THE COURT: No. Overruled.

[APPELLANT'S COUNSEL]: The court will note my objection.

THE COURT: The objection is noted.

█ Although appellant argues that the trial court "took it upon itself to announce to the jury, over defense counsel's vigorous objection, that the witness had previously asserted

her marital privilege, nothing in the record supports that contention." Appellant refers us to the following statement by the trial court:

> THE COURT: It is your privilege not to testify about those matters. You may have come here today and testified about circumstances under which you and the officers entered your home that evening, after the meeting on the side of the road. I will allow the state to question you as [Appellant's counsel] did with regard to circumstances under which you and they came back to the house.

According to appellant, the trial court's reference, in front of the jury, to Mrs. Boyer's assertion of her "privilege not to testify about those matters" unduly prejudiced him. We disagree.

Since it is clear that the trial court did not "announce to the jury" that the witness had previously asserted her *spousal* privilege, the defendant could not have been prejudiced by the court's statement to the witness, in the presence of the jury.

The trial court's instruction to Mrs. Boyer that she had the privilege not to testify about certain matters was preceded by the trial court's statement to Mrs. Boyer that

> [her] answer should address only what [she] said to the police with respect to what they might expect or what [she] knew to be the situation in the house as [she] and they were arriving there. The direct examination did not go into things that might have happened earlier that day before [Mrs. Boyer] and the police were approaching the house. It talked only about what was going on as [she] and the cops were entering the house and what [she] might have been telling them, concerns [she] might have expressed.

The trial court's statement about Mrs. Boyer's privilege not to testify was tied clearly to its instruction to Mrs. Boyer that she did not have to answer questions that exceeded the scope of direct examination.

"Cross-examination is generally limited to the scope of direct examination and is subject to the trial court's sound discretion." *Pineta v. State,* 98 Md.App. 614, 624, 634 A.2d

982 (1993); *see also Colvin–El v. State,* 332 Md. 144, 169, 630 A.2d 725 (1993) (citing the general rule that "cross-examination ordinarily may only be used to explore the subject matter covered by the witness in his direct examination and for impeachment purposes"). We hold that, in the case *sub judice,* the trial court exercised its sound discretion when it limited the scope of cross-examination by instructing Mrs. Boyer that she was obliged to testify only about matters that were covered on direct examination. Accordingly, we perceive no error on the part of the trial court.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**