PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

       *Plaintiff-Appellee,*

v.

JIMMIE VANCE GRUBBS,

       *Defendant-Appellant.*

No. 07-5040

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Robert J. Conrad, Jr., Chief District Judge.
(3:06-cr-00048-RJC)

Argued: September 24, 2009

Decided: November 6, 2009

Before WILKINSON, SHEDD, and AGEE, Circuit Judges.

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Wilkinson and Judge Shedd joined.

## COUNSEL

**ARGUED**: Matthew Segal, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant. Adam Christopher Morris, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Claire J. Rauscher, Exec-

utive Director, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant. Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellee.

---

**OPINION**

AGEE, Circuit Judge:

Jimmie Vance Grubbs pled guilty to six counts of knowingly transporting someone under the age of eighteen in interstate commerce with intent to engage in a sexual activity, in violation of 18 U.S.C. § 2423(a), and six counts of traveling in interstate commerce for the purpose of engaging in a sexual act with a person under the age of eighteen, in violation of 18 U.S.C. § 2423(b). The district court sentenced Grubbs to 240 months of imprisonment and a life term of supervised release. On appeal, Grubbs does not contest his convictions, but contends the district court erred in imposing his sentence for three reasons: (1) the district court violated his Sixth Amendment rights by considering uncharged conduct when deciding an appropriate sentence; (2) the district court violated his Fifth Amendment rights by failing to require the Government to prove uncharged conduct by more than a preponderance of the evidence standard; and (3) the district court committed procedural errors in calculating his United States Sentencing Guidelines ("Guidelines") range. For the reasons that follow, we disagree with Grubbs and affirm the judgment of the district court.

I.

In April 2005, police began investigating Grubbs after a 14-year-old student ("Child Victim 1" or "C.V.1") reported Grubbs initiated inappropriate sexual contact during an out-of-state school trip. At the time, Grubbs was a language arts

teacher and coach at a public middle school in North Carolina. Grubbs had worked with minors for over 30 years as a teacher, Sunday school instructor, coach, and in Boy Scouts. In these capacities he had, on multiple occasions, taken trips out-of-state with a number of middle school boys under the age of eighteen.

Child Victim 1 reported that Grubbs had developed a friendship with him over the course of his 7th and 8th grade years. During a school trip to Myrtle Beach, South Carolina, in the spring of 2005, Grubbs sexually assaulted C.V.1 on several occasions. Following an investigation into these events Grubbs resigned his position at the middle school in May 2005.

In December 2005, police were asked to investigate a report of child molestation made by a 14-year old minor ("Child Victim 2" or "C.V.2"). Child Victim 2 reported that Grubbs befriended him when Grubbs was his English teacher in the fall of 2003. Grubbs asked C.V.2 to help him in his classroom after school and on weekends. Grubbs initiated hugging and French kissing, which subsequently developed to mutual masturbation and oral sex "four to five times weekly." During a September 2004 trip to Myrtle Beach, South Carolina, Grubbs and C.V.2 engaged in oral sex "anywhere from 10 to 30 times." The following school year, Grubbs met with C.V.2 during planning periods and they would have oral sex in his classroom. During the course of these events, Grubbs gave C.V.2 money and gifts, and "cut [him] a break" on his grades. (J.A. 249.)

Following the initial investigation and Grubbs' arrest for these offenses, other victims came forward. The pre-sentence report ("PSR") specifically sets forth the statements of nine additional victims — three of whom were also still minors at the time of sentencing. The accounts are consistent: according to all but one of the victims, Grubbs began sexually molesting

them when they were young teenagers.[1] Most of the victims reported the assaults occurred regularly, on multiple occasions over months or years. Typically, Grubbs befriended the victims' parents, and became a "father figure" to them while serving as their teacher, Sunday School teacher, or coach. He took them on trips to South Carolina and elsewhere, and gave them gifts. In some cases, he would give them better grades than they had earned.

Grubbs was indicted on a twelve-count bill of indictment. Counts One through Six charged Grubbs with violations of 18 U.S.C. § 2423(a), and Counts Seven through Twelve charged Grubbs with separate violations of 18 U.S.C. § 2423(b). The charged offenses took place between August 2002 and January 2006. Grubbs pled guilty, without the benefit of a written plea agreement, to all twelve counts.

The pre-sentence report ("PSR") calculated Grubbs' offense level for each offense, and then calculated the combined offense level for all the offenses, as specified under § 3D1.4 of the Guidelines. Grubbs' combined adjusted offense level was 37, which after adjustment for acceptance of responsibility, yielded a total offense level of 34. Grubbs had 0 criminal history points, resulting in a criminal history category of 1. Based on these scores, the recommended Guidelines range for imprisonment was 151 to 188 months.[2]

Several witnesses testified at the sentencing hearing. Former Detective Kenny Lynch, of the Huntersville, North Carolina Police Department, had been an investigator on Grubbs'

---

[1] One victim (Victim 10), now an adult, stated that he did not recall Grubbs initiating sexual conduct with him, but that when he was 15 years old (1996 and 1997), Grubbs discussed child pornography with him and once "adjusted [V.10's] clothing to make sure the pants fit well" in a manner that made him uncomfortable. (J.A. 252.)

[2] 18 U.S.C. § 2423(a) and (b) set a minimum of 5 and maximum of 30 year term of imprisonment.

case. He testified as to the accuracy of the statements in the PSR regarding the nature of the investigation, the conduct underlying the counts of conviction, and the additional incidents and victims identified in the report. One of Grubbs' adult victims testified as to the nature of the assaults against him and the effect that those incidents had on him. In addition, a letter from the parents of Child Victim 2 was read into the record, and Child Victim 2 read his victim statement letter, detailing the severe emotional and psychological problems he struggled with as a result of Grubbs' actions.

Grubbs argued against imposition of a vulnerable victim adjustment to his offense level. After hearing the parties' arguments, the district court found the vulnerable victim adjustment was appropriate for the charges stemming from Child Victims 2, 3, and 5, but not Child Victim 4.

The district court had previously expressed its concern that the Guidelines calculation did not reflect the true nature of Grubbs' conduct, noting that while the Guidelines range was calculated as a result of the specific counts in the indictment, which could reflect "a one act occurrence," the evidence indicated "that it's a repeatingly multiple reoccurrence" and involved more than the five victims identified in the offenses of conviction. (J.A. 129, 134.) Grubbs objected to the district court's use of uncharged conduct as a basis for enhancing his sentence.

The district court found that the evidence of uncharged conduct was "sufficiently reliable to rely upon in this sentencing hearing" because the evidence was "credible, [and] internally consistent with the various accounts of the molestation of multiple victims." (J.A. 160.) The district court concluded the Guidelines range was not "sufficient to capture the magnitude" of Grubbs' "predatory conduct," and that his "criminal activity falls outside of the heartland of the guidelines." (J.A. 161-62.) Accordingly, the district court concluded "that a

departure and/or a variance is necessary to accomplish the sentencing objectives of [18 U.S.C. § 3553(a)]." (J.A. 162.)

The district court further noted:

> [E]ach of the young victims was subject to multiple acts of molestation heard of while the defendant traveled in interstate commerce for that purpose from North Carolina to South Carolina and engaged in acts of—numerous acts of molestation in South Carolina but also as well in intrastate activity that is not captured by the guideline sentence.

(J.A. 162.) The district court then recounted specific examples involving the victims who were identified in the counts of conviction, demonstrating repeated in-state and out-of-state instances of sexual assault. In light of this evidence, the district court concluded the "bulk of the criminal assaults perpetrated on [the five victims named in the indictment] alone . . . are not taken into account at all by the advisory guidelines— only about 10 percent of the actual criminal conduct was needed to reach the guideline levels set forth [in the PSR]." (J.A. 164.)

The district court then recounted the criminal conduct Grubbs engaged in against victims not identified in the counts of conviction. The court noted Grubbs' criminal conduct "is indicative of someone who has engaged in his conduct relentlessly and heinously over a long period of time" and that Grubbs' criminal history category of 1 substantially underrepresented the seriousness of Grubbs' past conduct. (J.A. 167.)

The district court also observed that Grubbs persisted in molesting Child Victim 4 even after he had resigned from teaching due to allegations of abuse. It noted the "need to protect the public from further crimes of the defendant" was a goal not adequately captured in the guidelines range. (J.A. 167.)

The district court imposed two upward departures. First, it adjusted Grubbs' criminal history category upward two levels. The court noted that in its "experience . . . a defendant with a criminal pattern like this is more analogic [sic] to an offender criminal history 6, and the [c]ourt will use a criminal history category 3 as the conservative measure of the criminal conduct that is not adequately captured by the advisory guidelines." (J.A. 169.) Next, the district court applied a one-level upward departure to Grubbs' offense level. It did so because "the offense level failed to capture the vast majority of the defendant's criminal behavior," and "[g]iven the multiple account grouping guideline [provisions], any additional victims or criminal acts would not affect the guideline range." (J.A. 169.) It noted that the modest extent of each departure was an "act of restraint" on its part. (J.A. 170.)

Under the adjusted Guidelines calculation, using an offense level of 35, and a criminal history category of 3, Grubbs' sentencing range was 210 to 262 months' imprisonment. The district court then analyzed the § 3553(a) factors in light of Grubbs' conduct, and sentenced Grubbs to 240 months' imprisonment.

Grubbs noted a timely appeal. We have jurisdiction under 28 U.S.C. § 1291 (2000).

## II.

### A.

Grubbs first contends that his Sixth Amendment rights were violated because the district court relied on uncharged conduct to increase his sentence above that determined under the initial Guidelines calculation. Grubbs asserts that based solely on his twelve counts of conviction, his sentence of 240 months would be unreasonable. He maintains that a sentence of this length can only be considered reasonable by relying on the district court's conclusion that Grubbs had committed

additional offenses for which he had not been convicted. Citing *United States v. Booker*, 543 U.S. 220 (2005), Grubbs reasons that the substantial increase in his sentence due to judge-found facts on uncharged conduct violates the Sixth Amendment's jury trial guarantee.

Because Grubbs preserved his Sixth Amendment challenge by raising this issue in the district court, this court's review is de novo. *See United States v. Hall*, 551 F.3d 257, 266 (4th Cir. 2009).

Grubbs' argument is nullified by clear Supreme Court and Fourth Circuit precedent holding that a sentencing court may consider uncharged and acquitted conduct in determining a sentence, as long as that conduct is proven by a preponderance of the evidence. *See United States v. Watts*, 519 U.S. 148, 157 (1997) (holding "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proven by a preponderance of the evidence"); *United States v. Jones*, 31 F.3d 1304, 1316 (4th Cir. 1994) (holding that a "defendant need not be convicted of the charges constituting relevant conduct for him still to be held accountable for them" when a sentencing court determines the defendant's sentence, as long as the government "establish[es] the existence of these other incidents by a preponderance of the evidence").

*Booker* did not change the sentencing court's ability to consider uncharged or even acquitted conduct during sentencing. In *United States v. Benkahla*, 530 F.3d 300 (4th Cir. 2008), we rejected a similar argument to that now made by Grubbs:

> Sentencing judges may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as that Guidelines sentence is treated as advisory and falls within the statutory maximum authorized by the jury's verdict. Indeed,

> "many individual Guidelines apply higher sentences in the presence of special facts" and "[i]n many cases, the sentencing judge, not the jury, will determine the existence of those facts." *Rita v. United States*, 551 U.S. ___, 127 S. Ct. 2456, 2465 (2007). That "does not violate the Sixth Amendment," however, because "[a]s far as the law is concerned, the judge could disregard the Guidelines and apply the same sentence . . . in the absence of the special facts." *Id.* at 2465-66; *see also United States v. Battle*, 499 F.3d 315, 322-23 (4th Cir. 2007) ("When applying the Guidelines in an advisory manner, the district court can make factual findings using the preponderance of the evidence standard."). The point is thus that the Guidelines must be advisory, not that judges may find no facts.

*Benkahla*, 530 F.3d at 312. A defendant can challenge the district court's factual findings as well as the extent of the district court's reliance on those findings as part of his appeal of the reasonableness of the sentence imposed. However, the court's underlying ability to make factual findings regarding uncharged conduct does not violate the Sixth Amendment's jury trial guarantee. Accordingly, the district court's use of uncharged conduct in determining Grubbs' sentence did not violate the Sixth Amendment.

### B.

Grubbs next contends the district court violated his Fifth Amendment due process rights because it failed to apply a clear and convincing evidence standard of proof at sentencing. Primarily relying on language in the Supreme Court's decision in *McMillan v. Pennsylvania*, 477 U.S. 79 (1986), Grubbs contends that proof by clear and convincing evidence is the proper standard where, as here, uncharged conduct "substantially increase[s]" the defendant's sentence. (Appellant's Br. 31, 35.)

Before addressing the merits of Grubbs' argument, we note that our review of the record shows that Grubbs failed to raise any argument about the standard of proof in the district court. His arguments in the district court as to uncharged conduct were based on the Confrontation Clause, lack of notice, and the reliability and admissibility of the evidence during the sentencing hearing. At no time, however, did Grubbs argue as to the standard of proof the district court should use to find facts that enhanced his sentence.

Because Grubbs failed to raise the issue below, we review for plain error. *United States v. Wilson*, 484 F.3d 267, 279 (4th Cir. 2007). Under the plain error standard of review, the defendant must show (1) that an error was committed; (2) that the error was plain; and (3) that the error affected his substantial rights. *See United States v. Promise*, 255 F.3d 150, 154 (4th Cir. 2001) (en banc). For the reasons set forth below, we conclude there was no error, plain or otherwise.

In the landmark case *In re Winship*, 397 U.S. 358 (1970), the Supreme Court established a due process right "against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.* at 364. In *Patterson v. New York*, 432 U.S. 197 (1977), the Supreme Court clarified the *Winship* holding to be that proof beyond a reasonable doubt was only required for facts establishing the elements of the charged offense. *Id.* at 210-11. It was in this context that the Supreme Court considered the challenge to Pennsylvania's mandatory sentencing statute in *McMillan*.

In effect, the defendant in *McMillan* argued due process required a higher standard of proof than preponderance of the evidence because findings on mandatory sentencing factors in his case amounted to findings on elements of the underlying criminal offense. The Third Circuit Court of Appeals has synopsized the Supreme Court's holding as follows:

> After noting that it previously had "rejected the claim that whenever a State links the severity of punishment to the presence or absence of an identified fact the State must prove that fact beyond a reasonable doubt," the Supreme Court held that Pennsylvania could treat possession of a firearm as a sentencing factor. The Court then held it constitutional for a judge to find such sentencing factors by a preponderance of the evidence — and not by clear and convincing evidence, as the petitioners had argued — explaining that "[w]e have some difficulty fathoming why the due process calculus would change simply because the legislature has seen fit to provide sentencing courts with additional guidance."

*United States v. Fisher*, 502 F.3d 293, 299-300 (3d Cir. 2007) (quoting *McMillan*, 477 U.S. at 84, 91, and 92) (internal citations omitted).

In dicta, however, the Supreme Court then observed that a case could theoretically arise where a reasonable doubt standard would be appropriate if a sentencing factor were, in reality, a necessary element of the crime charged. *McMillan*, 477 U.S. at 86-88. In such a case, a finding of facts at sentencing by a preponderance of the evidence could be "a tail which wags the dog of the substantive offense." *Id.* at 88. However, the Supreme Court gave no example of what would constitute a circumstance necessitating a standard other than a preponderance of the evidence.

In *United States v. Watts*, 519 U.S. 148 (1997), the Supreme Court acknowledged the "*McMillan* exception," but reiterated that the preponderance of the evidence standard "generally satisfies due process." *Id.* at 156-57; *see also id.* at 151-57 (discussing the reasons for different standards of proof for facts found at trial and sentencing). Our circuit, among others, had also acknowledged the *McMillan* exception, but noted, "[p]roof by a preponderance of evidence is sufficient

[to enhance a sentence using uncharged conduct] as long as the enhancement is not a tail that wags the dog of the substantive offense."[3] *See United States v. Montgomery*, 262 F.3d 233, 249 (4th Cir. 2001) (internal quotation marks and citation omitted).

Whatever theoretical validity may have attached to the *McMillan* exception to a preponderance of the evidence sentencing standard, the Supreme Court's decision in *Booker* and subsequent cases applying *Booker* have nullified its viability. We find the well-reasoned analysis of the Court of Appeals for the Third Circuit in *United States v. Fisher*, 502 F.3d 293 (3d Cir. 2007), particularly instructive on this point.

Although the Third Circuit had required proof by clear and convincing evidence in certain cases prior to *Booker*, *id.* at 296, it held unequivocally in *Fisher* that the post-Booker advisory nature of the Guidelines eliminates any due process argument for a heightened standard of proof at sentencing. *Id.* at 308.

In *Fisher*, the Third Circuit addressed the same issue Grubbs would have us address here: "Does the Due Process Clause of the Fifth Amendment require a district court to find facts supporting sentencing enhancements by more than a preponderance of the evidence?" *Id.* at 296. After a thorough review of the Supreme Court's sentencing jurisprudence from *McMillan* to *Booker*, the Third Circuit concluded the answer to the query was clearly "no":

---

[3]In the years between *McMillan* and *Booker*, the Circuit Courts split as to whether a heightened standard of proof would ever be required and, if so, when. *See Watts*, 519 U.S. at 156 & n.2 (discussing the split among the Circuits and collecting cases). While several circuits referenced the "tail that wags the dog" concern espoused in *McMillan*, only two circuits held that clear and convincing evidence was required where certain facts had a sufficiently great and disproportionate impact on a defendant's sentence. *See United States v. Hopper*, 177 F.3d 824, 833 (9th Cir. 1999); *United States v. Kikumura*, 918 F.2d 1084, 1101-02 (3d Cir. 1990).

Insofar as *Booker* rendered the Guidelines advisory[,] we reasoned that "the maximum legislatively authorized punishment to which the defendant is exposed is no longer the maximum prescribed by the Guidelines; instead, it is the maximum prescribed by the United States Code." Because "[n]one of the facts relevant to enhancements or departures under the Guidelines can increase the maximum punishment to which the defendant is exposed," we explained that they need not be proven by a reasonable doubt. We concluded: "Under an advisory Guidelines scheme, district courts should continue to make factual findings by a preponderance of the evidence and courts of appeals should continue to review those findings for clear error."

. . . .

. . . [U]nder an advisory system, "[f]acts relevant to enhancements under the Guidelines would no longer increase the maximum punishment to which the defendant is exposed, but would simply inform the judge's discretion as to the appropriate sentence." Accordingly, sentencing judges are free to find facts by a preponderance of the evidence, provided that the sentence actually imposed is within the statutory range, and is reasonable. In other words, although concerns about the "tail wagging the dog" were valid under a mandatory guideline system — like the Pennsylvania system addressed in *McMillan* and the federal Guidelines [pre-*Booker*] — these concerns were put to rest when *Booker* rendered the Guidelines advisory. . . .

. . . .

. . . After *Booker*, the "offense of conviction" is defined by the United States Code; thus, a reason-

able sentence which does not exceed the maximum prescribed by the Code cannot possibly be "disproportionate to the offense of conviction."

. . . .

. . . In sum, because the Guidelines are now advisory and district judges are empowered to discharge their duties fully in the first instance, it is a logical impossibility for the "tail to wag the dog," as could occur when the Guidelines were mandatory.

*Id.* at 305, 307-08.

Under the present sentencing system, the district court continues to "mak[e] appropriate findings of fact to calculate the sentencing range prescribed by the Guidelines [and] *Booker* ultimately did not change the procedure by which Guidelines sentencing facts are found." *United States v. Morris*, 429 F.3d 65, 69 (4th Cir. 2005). As a practical matter, then, the only change is "the degree of flexibility judges . . . enjoy in applying the guideline system." *Id.* at 72 (quoting *United States v. McReynolds*, 397 F.3d 479, 481 (7th Cir. 2005)). Sentencing courts continue to exercise their long-standing authority to hear the evidence, and consider any evidence at sentencing that "has sufficient indicia of reliability."[4] *See* U.S.S.G.

---

[4]The Guidelines provide the district court direction in considering facts to be used during sentencing. U.S.S.G. § 6A1.3(a) states:

When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

The comment to this section of the Guidelines elaborates that "use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns . . . ." Para. 3.

§ 6A1.3(a). We are thus persuaded that after *Booker*, the due process clause does not require the district court to find uncharged conduct by a heightened standard of proof before using it as a basis for determining a defendant's sentence.[5] As the Sixth Circuit Court of Appeals observed in *United States v. Brika*, 487 F.3d 450 (6th Cir. 2007), challenges to "large enhancements . . . should be viewed through the lens of *Booker* reasonableness rather than that of due process." 487 F.3d at 462 (citation omitted).

For the aforementioned reasons, we conclude the district court was not required to apply a heightened standard of proof to uncharged conduct used as the basis for enhancing Grubbs' sentence. Preponderance of the evidence is the appropriate standard of proof for sentencing purposes.[6] Accordingly, the

---

[5]This approach is consistent with a majority of Circuit Courts to address the issue post-*Booker*, which have concluded that preponderance of the evidence is sufficient to support facts relied upon for purposes of sentencing. *See, e.g.*, *United States v. Razo-Guerra*, 534 F.3d 970, 975 (8th Cir. 2008); *United States v. Pacheco*, 489 F.3d 40, 45 (1st Cir. 2007); *United States v. Grier*, 475 F.3d 556, 565-66, 568 (3d Cir. 2007) (en banc); *United States v. Kosinski*, 480 F.3d 769, 774-77 (6th Cir. 2007); *United States v. Hall*, 473 F.3d 1295, 1312 (10th Cir. 2007); *United States v. Dean*, 487 F.3d 840, 854 (11th Cir. 2007); *United States v. Gonzalez*, 407 F.3d 118, 125 (2d Cir. 2005); *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005); *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005). *But see United States v. Staten*, 466 F.3d 708, 717-20 (9th Cir. 2006) (analyzing whether the clear and convincing evidence standard survived post-*Booker*, and concluding that it did because the focus for determining the appropriate standard of proof was on "the *actual* effect a given fact had on the sentence that the district court ultimately imposed, not on whether the district court was *required* to give a fact it found the effect it did") (emphasis in original).

[6]In his brief on appeal, Grubbs contends the district court did not use a preponderance of the evidence standard for proving evidence, but instead only weighed whether the evidence was "reliable." This argument lacks merit. As noted, Grubbs failed to make any argument relating to standard of proof in the district court. Viewed in context, the district court's comments regarding reliability and credibility of the evidence that Grubbs points to as support for this assertion on appeal were all responses

district court did not err by relying on uncharged conduct that was proven by that standard.[7]

## C.

Lastly, Grubbs asserts the district court committed two procedural errors and therefore incorrectly calculated the applicable Guidelines range. We review the district court's imposition of a sentence under a deferential abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, __, 128 S. Ct. 586, 597 (2007). Our initial inquiry is to determine whether the district court committed a procedural error, such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.*

Grubbs contends the district court impermissibly enhanced his criminal history category by two levels and his offense level by one level based on the same conduct. He argues that, in so doing, the district court blurred the "clear distinction" between setting criminal history according to conduct that is

---

to the actual arguments Grubbs made in district court, which challenged the admissibility and weight of the evidence. Those comments do not show the district court wrongly applied a standard of proof based on "reliability." Grubbs conceded as much during oral argument, when he averred that common sense indicates that the district court used a preponderance of the evidence standard, even though it did not articulate what standard of proof applied at the time of its decision.

[7]To the extent that Grubbs asserts the district court's sentence cannot be sustained because it made no factual findings to support the sentence, the record refutes this claim. Prior to sentencing Grubbs, the district court specifically referred to the testimony of Officer Kenny Lynch and the other witnesses at the sentencing hearing and the information contained in the PSR, detailing specific examples of the full scope of Grubbs' conduct.

not part of the instant offense and setting the offense level according to relevant conduct that is part of the current offense. (Appellant's Br. 38-41.)

Under U.S.S.G. § 4A1.3(a)(1), a district court may depart upward if "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes . . . ." In deciding whether to depart under this provision, the court may consider prior similar adult conduct not resulting in a criminal conviction. U.S.S.G. § 4A1.3(a)(2)(E). Here, the district court concluded that a criminal history category of I seriously under-represented Grubbs' criminal history and the likelihood that he would commit future crimes. In so doing, the court specifically noted that Grubbs had at least a twenty-year history of molesting male, middle-school boys, and that he engaged in the "[c]ontinued predatory conduct" of abusing Child Victim 4 after he was under investigation for abuse. (J.A. 166-69.) On these facts, the district court's decision to upwardly depart was based on the proper criteria set forth in §4A1.3, and the extent of the departure is reasonable and supported.

The district court did not cite a specific departure provision to support its decision to apply a one-level upward departure to Grubbs' offense level. It simply held that Grubbs' initial

> offense level failed to capture the vast majority of the defendant's criminal behavior. Only five of the nearly dozen known victims are represented in the indictment. Given the multiple account grouping guideline[s], any additional victims or criminal acts would not affect the guideline range. Accordingly, the court finds that the defendant's conduct is at least one more level serious than the applicable guideline range. Such a one-level departure is actually in the Court's opinion an act of restraint on its part.

(J.A. 169-70.) Pursuant to U.S.S.G. § 5K2.0(a)(1), the sentencing court may depart upwardly from the applicable offense level based on facts "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described." However, this provision does not cover departures based on a defendant's criminal history, which is addressed by other Guidelines provisions, such as § 4A1.3, discussed earlier. *See* § 5K2.0 cmt. n.2(B). The district court's reason for awarding the offense level departure relied — at least in part — on the existence of additional victims not reflected in the counts of conviction. Therefore, if § 5K2.0 was the basis for the departure, the district court may have erred in relying on this non-offense-based factor.[8]

Even so, the resulting sentence is procedurally reasonable because the district court adequately explained its sentence on alternative grounds supporting a variance sentence, by reference to the 18 U.S.C. § 3553(a) factors. *See United States v. Evans*, 526 F.3d 155, 165 (4th Cir. 2008) ("When . . . a district court offers two or more independent rationales for its deviation, an appellate court cannot hold the sentence unreasonable if the appellate court finds fault with just *one* of these rationales.") (emphasis in original); *United States v. O'Georgia*, 569 F.3d 281, 296 (6th Cir. 2009).

---

[8]The district court also provided the alternative ground for an upward departure of the offense level, citing U.S.S.G. § 5K2.3, and the "extreme psychological injury much more serious than that and normally resulting from the commission of the offense" based on the victim impact statements and testimony at the sentencing hearing regarding the "devastation" and "severe impairment" Grubbs' conduct had on his victims. (J.A. 170-72.) However, this ground suffers the same problem identified for the general offense-level departure provision of § 5K2.0 — the district court relied on both the testimony of the victim in both the charged offense and in some of the uncharged conduct to support this basis for a departure.

Here, the district court's statements during sentencing adequately explain the basis for Grubbs' sentence in terms of the § 3553(a) factors apart from its specific references to Guidelines departures. As noted above, the district court recounted Grubbs' substantial uncharged conduct, both in the form of additional incidents of abuse against the victims identified in the charged offenses and additional victims not identified in those convictions. It also observed Grubbs' persistent and increasing abuse over the years, including continued abuse of victims despite being aware that authorities were investigating him for abuse. In addition, the court specifically noted,

> when I look at [Grubbs'] history and characteristics, I see good as well as bad, and I see families and people affected positively by you. And I weigh that in the consideration of the appropriate sentence. It shrinks in comparison to the predatory criminal conduct that you engaged in. Our community trusted you as a public school and Sunday school teacher; as a coach, trusted you to protect, educate and care for children. You perverted that trust. . . .
>
> . . . [T]he Court has to protect the public from this conduct. It must provide just punishment, must ensure that conduct never happens again. . . . [Sentencing must accomplish the goals] of protecting the public, deterring other criminal conduct and incapacitating you in a way that you will never harm children again and will also try in this sentence to provide rehabilitation to you in a most effective manner.

(J.A. 173-74.) For these reasons, the court concluded that its sentence of 240 months was

> sufficient but not greater than necessary to accomplish the sentencing objectives of Section 3553A including the need for the imposed sentence to

> reflect the seriousness of the offense[,] [promote] a respect for the law, provide just punishment, . . . adequately determined deterrents[,] and to protect the public, especially young boys, from further crimes of the defendant.
>
> The sentence also provides, extended when needed, medical[,] psychiatric care and other correctional treatment in the most effective manner, takes into account the nature and seriousness of these offenses. Plus the history and characteristics of the defendant addresses the kind of sentencing available including guideline sentencing ranges in policy statements of the United States Sentencing Commission. It takes into account the need to avoid unwarranted sentencing dispara[ties] among similarly situated defendants.

(J.A. 175-76.) This additional, § 3553(a)-based, explanation of Grubbs' sentence provides independent grounds for a variance sentence and verifies the reasonableness of the district court's sentencing determination.

Grubbs next contends the district court erred by applying vulnerable-victim adjustments based on facts already considered in calculating the offense guidelines.

Section 3A1.1(b) of the Guidelines provides for a two-level increase if the defendant knew or should have known that a victim of the offense was "unusually vulnerable due to age, physical or mental condition, or [was] otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1 cmt. n.2. The commentary to this provision prohibits application of the vulnerable-victim adjustment "if the factor that makes the person a vulnerable victim is incorporated in the offense guideline." *Id.* Thus, in order to apply the § 3A1.1(b) adjustment, the district court had to rely on factors unrelated to the calculation of his offense level, which relied on the child vic-

tims being in Grubbs' care, *see* U.S.S.G. § 2G1.3(b)(1)(B), the child victims being unduly influenced because Grubbs was at least 10 years older than they were, *see* U.S.S.G. § 2G1.3(b)(2)(B) & cmt. n.3(B), and the fact that the offenses involved a sex act or sexual contact. *See* U.S.S.G. § 2G1.3(B)(4)(A).

As noted, the district court applied the vulnerable-victim adjustment to the counts involving Child Victims 2, 3, and 5. In so doing, the district court did not rely on any of the prohibited factors. (J.A. 73-79.) Instead, it concluded that the adjustment was warranted for Child Victim 2 and Child Victim 3 because Grubbs awarded higher grades to the boys than the grades they earned, gave them gifts, and guaranteed the receipt of a college football scholarship. It also found that the adjustment was appropriate for Child Victim 5 because Grubbs gained the trust of the victim's single mother, who suffered from a chronic illness, by providing transportation and financial assistance to the family.

On this record, we cannot conclude the district court clearly erred by applying the vulnerable-victim adjustment to Child Victims 2, 3, and 5. Furthermore, we note that even if these facts did not support application of the adjustment, the Guidelines calculation would not be affected. *See* U.S.S.G. § 3D1.4 (determining combined offense level). Accordingly, we find the district court did not commit reversible error in calculating Grubbs' Guidelines range and the sentence was therefore procedurally reasonable.[9]

### III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*

---

[9]Grubbs only challenges the procedural reasonableness of his sentence, and therefore we make no inquiry as to the substantive reasonableness of the sentence. *See Gall*, 128 S. Ct. at 597.