**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-4806**

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

LLOYD MACK ROYAL, III,

        Defendant – Appellant.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt. Alexander Williams, Jr., District
Judge. (8:09-cr-00048-AW-1)

Submitted: July 21, 2011        Decided: August 10, 2011

Before KING and DAVIS, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Affirmed by unpublished per curiam opinion.

David W. Lease, SMITH, LEASE & GOLDSTEIN, LLC, Rockville,
Maryland, for Appellant. Rod J. Rosenstein, United States
Attorney, Baltimore, Maryland, Thomas E. Perez, Assistant
Attorney General, Jessica Dunsay Silver, Lisa J. Stark,
Attorneys, Civil Rights Division, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Lloyd Mack Royal, III, of seven offenses: conspiracy to commit sex trafficking, 18 U.S.C. § 371; sex trafficking, 18 U.S.C. § 1591; possession of a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c); conspiracy to distribute narcotics, 21 U.S.C. § 846; and distribution of narcotics to persons under the age 21, 21 U.S.C. § 859. The district court sentenced Royal to a total of 37 years of imprisonment.

On appeal, Royal does not challenge his convictions. Instead, he argues that the district court erred in five respects in calculating his sentence. Namely, he maintains that the district court erred in applying the following four sentencing guidelines enhancements: (1) vulnerable victim; (2) use of a computer; (3) obstruction of justice; and (4) leadership role. In addition, he assigns error in the district court's consideration of conduct that was not proven to the jury beyond a reasonable doubt. As explained below, we affirm.

I.

In April 2007, Royal met seventeen-year-old Melissa P.[1], a homeless, drug-using, high-school dropout. Melissa's mother was

---

[1] Because the victims were minors at the time of the offense, the record refers to them by first name only.

2

recently divorced and living in a homeless shelter and Melissa had no contact with her family. Melissa survived by stealing food, sleeping in storage bins, and by spending time in fast-food restaurants and the basements of apartment buildings. Several hours after meeting Melissa, and after Royal gave her alcohol and marijuana, Melissa had sex with Royal and his cousin because she needed a place to sleep.

Royal arranged for Melissa to stay at the residence of Shantia Tibbs and subsequently, the residence of Angela Bentolila. Shortly thereafter, Melissa introduced Royal to another seventeen-year-old girl named Stephanie. After meeting Stephanie, Royal gave both girls alcohol and marijuana. He later instructed them to dance naked on a bed and repeatedly engaged in sexual acts with them. While Melissa lived with Bentolila, Royal repeatedly assaulted Melissa, threatened to kill her and harm her sister, and anally raped her.

Several weeks after meeting both girls, Royal directed Tibbs to find customers willing to pay for sex with the teenagers. Tibbs contacted Mark Witherspoon, who agreed to pay for sex. The same day, Tibbs and Bentolila prepared Melissa and Stephanie for prostitution by providing them with provocative clothing, styling their hair and applying their makeup. Bentolila provided Royal with a vehicle and cell phone to facilitate the commercial sex. Tibbs drove Melissa and Stephanie

3

to Witherspoon's Washington, D.C. residence and watched while the girls engaged in sex acts with Witherspoon. Afterwards, Tibbs collected money from Witherspoon and gave that money to Royal.

In May 2007, Royal observed one of Melissa's friends on the social internet website MySpace and directed Melissa to contact the girl because he "needed another girl" and "thought she was gorgeous." J.A. 267. At Royal's direction, Melissa "typed" the friend, Ilana, and later called her in order to facilitate the introduction. J.A. 267. Ilana was fifteen years of age. On May 8, 2007, Royal, along with an acquaintance, took Melissa and Ilana to an apartment where Royal and the acquaintance converted powder cocaine into crack cocaine. At that time, Royal provided Melissa and Ilana with cocaine, phencyclidine (PCP), and ecstasy. After providing the girls with drugs, Royal drove them to Tibbs' residence where she provided Ilana with clothing and Melissa with condoms and a dental dam for use during commercial sex. Royal then took the girls to a hotel, where they both engaged in commercial sex acts with a customer. The following day, Royal again provided the girls PCP and facilitated commercial sex with the same customer.

Toward the end of May, law enforcement received a tip concerning Royal's activities and questioned Melissa, who denied having any knowledge. Melissa informed Royal, who instructed

4

Melissa to "lie" and state that he [Royal] "had no idea [about her] age." J.A. 210-11.

In addition to the sex trafficking, from September 2006 through May 2007, Royal arranged through Crystal Brown, a former girlfriend, the purchase of cocaine from a source in New York. Brown drove Royal to the source and provided him with the cash to purchase the cocaine. Brown also permitted Royal to sell and store marijuana and cocaine from her residence. From November 2006 to May 2007, Bentolila bought cocaine from Royal dozens of times. Royal often brought drugs to Bentolila's house, which Bentolila shared with Melissa and Stephanie as well as others. In April 2007, Royal forced Melissa to use cocaine, a drug she had never tried.

On January 28, 2009, Royal was indicted for conspiracy to commit sex trafficking, sex trafficking and possession of a firearm in furtherance of a crime of violence. Nearly six months later, the grand jury returned a second superseding indictment charging Royal with conspiracy to commit sex trafficking, three counts of sex trafficking, possession of a firearm in furtherance of a crime of violence, conspiracy to distribute controlled dangerous substances, and two counts of distribution of controlled dangerous substances to persons under the age of twenty-one.

On February 3, 2009, Royal and Bentolila were in adjoining holding cells waiting to make an appearance in the instant case. Royal instructed Bentolila to "Do the right thing and not snitch." J.A. 130. Bentolila explained that she understood Royal's directive to mean she should not say anything at all.

After a trial lasting from March 16, 2010, to March 24, 2010, Royal was convicted by a jury of all counts. However, on the drug conspiracy count, the jury found Royal not guilty of one of the three objects of the drug conspiracy (i.e., Royal was found guilty of conspiring to distribute cocaine and marijuana, but not PCP). On July 19, 2010, the district court conducted Royal's sentencing hearing. At the sentencing hearing, Royal challenged the vulnerable victim enhancement, the use of a computer enhancement, the obstruction of justice enhancement and the aggravating role in the offense enhancement.

The district court concluded the vulnerable victim enhancement was applicable because Melissa, Stephanie and Ilana came from "dysfunctional families," were "allowed to roam and hit the streets, and one was living essentially in a dumpster." J.A. 336-67. The court also cited the fact that Royal gave them drugs in order to take further advantage of them.

The court concluded that the obstruction of justice enhancement was justified because Royal sought to "influence" Bentolila by telling her not to snitch. J.A. 367. The district

6

court concluded that the use of a computer enhancement was warranted because Royal "directed and caused it[s]" use and directed Melissa to recruit Ilana. In total, the court sentenced Royal to an aggregate sentence of 37 years.

Royal filed a timely notice of appeal on July 23, 2010. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review a sentence imposed by a district court for reasonableness, applying a deferential abuse of discretion standard. See Gall v. United States, 552 U.S. 38, 51 (2007). The first step in the court's review of a sentence is to "ensure that the district court committed no significant procedural error, such as . . . improperly calculating [ ] the Guidelines range . . . [or] selecting a sentence based on clearly erroneous facts." Id. In assessing whether a sentencing court has properly applied the Guidelines, the court reviews factual findings for clear error and legal conclusions de novo. United States v. Llamas, 599 F.3d 381, 387 (4th Cir. 2010) (citing United States v. Osborne, 514 F.3d 377, 387 (4th Cir. 2008)).

## A.

Royal first challenges the district court's application of the vulnerable victim adjustment pursuant to U.S.S.G. § 3A1.1, which provides that a two-level adjustment applies "[i]f the

7

defendant knew or should have known that a victim of the offense was a vulnerable victim." Before making the adjustment, the court must first determine that a victim was "unusually vulnerable due to age, physical or mental condition, or . . . otherwise particularly susceptible to the criminal conduct." USSG § 3A1.1 cmt. n. 2.[2] See Llamas, 599 F.3d at 388. The sentencing court must also find the defendant knew or should have known of the victim's unusual vulnerability. Id. In other words, applying the vulnerable victim adjustment "requires a fact-based explanation of why advanced age or some other characteristic made one or more victims unusually vulnerable to the offense conduct, and why the defendant knew or should have known of this unusual vulnerability." Id. (citing United States v. Vega-Iturrino, 565 F.3d 430, 434 (8th Cir. 2009) (internal quotation marks omitted)).

The vulnerable victim adjustment does not apply, however, if the factor that makes the person a vulnerable victim is incorporated in the offense guideline. For example, if an offense guideline provides an enhancement for the age of the victim, the vulnerable victim enhancement could not be applied

---

[2] The adjustment currently does not require that the defendant have targeted the victim specifically because of his vulnerability. Before the 1995 amendment to § 3A1.1, Application Note 2 stated that the adjustment "applies to offenses where an unusually vulnerable victim is made a target of criminal activity by the defendant." See app. C, amend. 521.

8

because of the age of the victim. USSG § 3A1.1 cmt. n. 2; see also United States v. Grubbs, 585 F.3d 793, 805 (4th Cir. 2009). In addition, when an offense has multiple victims, the government need only prove that one victim was unusually vulnerable. Llamas, 599 F.3d at 388. Finally, in applying § 3A1.1(b)(1), a sentencing court should consider "all relevant conduct." United States v. Bolden, 325 F.3d 471, 500 (4th Cir. 2003). Because the court's determination is factual, we review for clear error. Llamas, 599 F.3d at 388.

Here, the record reflects that the district court found circumstances besides the age of the victims that made them particularly vulnerable to Royal's scheme. At Royal's sentencing hearing, the district court concluded:

> The Court has heard both sides, and the Court is in agreement with the government on these other issues in terms of the vulnerable victim and enhancement for that. Clearly, the evidence that I heard suggests that it's not based on age so much. . . . What we have here essentially is a vulnerable victim or victims, and it was more than age. You had a couple, probably all three of the minors come, from dysfunctional families. . . . They were allowed to roam and hit the streets, and one was living essentially in a dumpster almost. And essentially he was able to take advantage of them because of their vulnerability, and that's what the facts were. So, I think the enhancement for vulnerability is correct.

J.A. 366-67.

The record reflects that within hours of meeting each of the victims, Royal knowingly exploited their dependence on drugs

9

and alcohol by supplying each victim with alcohol, marijuana, cocaine, PCP or ecstasy. Throughout Royal's sexual exploitation of the victims, he continued to provide drugs and alcohol. As such, Royal took advantage of each victim's drug dependence vulnerability. See, e.g., United States v. Evans, 272 F.3d 1069, 1091 (8th Cir. 2001) (victim vulnerable to sex trafficking because defendant knew she was drug-addicted and provided her drugs); United States v. Amedeo, 370 F.3d 1305, 1317-18 (11th Cir. 2004) (teenage victim's "drug addiction rendered him unusually vulnerable" to defendant's supplying him with cocaine).

In addition, the record reflects that Melissa was homeless when she met Royal and had no contact with her mother. See, e.g., United States v. Irving, 554 F.3d 64, 75 (2d Cir. 2009) ("children who were homeless and were without parental or other appropriate guidance made them unusually vulnerable, independently of their ages"). As the government explained at sentencing, Royal not only took advantage of all of the victims' drug dependencies by "reduc[ing] their ability to say no and to make them easier to coerce," Royal "took advantage of [Melissa's] situation," and "placed [Melissa] with co-conspirators to enhance [his] control over her." J.A. 360-61. Accordingly, the district court did not err in applying the §

10

3A1.1 two level enhancement for the vulnerability of Royal's victims.

B.

Next, Royal challenges the district court's application of the use of a computer enhancement pursuant to U.S.S.G. 2G1.3(b)(3) for conspiracy to commit sex trafficking and the substantive sex trafficking offense involving Ilana. Such an adjustment is warranted if a "computer or interactive computer service" is used to "(A) persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct; or (B) entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor." U.S.S.G. § 2G1.3(b)(3). The enhancement applies even if a defendant did not personally use the computer since the enhancement "makes no mention of the defendant, but focuses on the mechanism involved in the offense." United States v. Dotson, 324 F.3d 256, 259 (4th Cir. 2003).

Here, Melissa testified that while she was on her MySpace page, Royal saw a picture of Ilana and told Melissa that "he wanted her." J.A. 267. After informing Royal that Ilana was only fifteen years old, Royal indicated that he did not care and prompted Melissa to message her. J.A. 266-67. Nevertheless, Royal contends that even if a message were typed to Ilana, there

11

is no testimony as to what that message was or whether it related to Royal.

We find Royal's argument unpersuasive. The enhancement applies even if a message soliciting sexual conduct is not transmitted via computer; it is sufficient that a computer "facilitate" a minor's "engage[ment] in prohibited sexual conduct." U.S.S.G. § 2G1.3(b)(3). See also United States v. Lay, 583 F.3d 436, 447 (6th Cir. 2009) ("To allow a predator to use a computer to develop relationships with minor victims, so long as the ultimate consummation is first proposed through offline communication, would not serve the purpose of the enhancement."). Accordingly, the district court did not err in increasing Royal's offense level by two levels for use of a computer pursuant to § 2G1.3(b)(3).

C.

Next, Royal challenges the district court's application of the obstruction of justice adjustment. He contends the evidence is insufficient to demonstrate that he acted willfully. Guideline § 3C1.1 directs a sentencing court to add two offense levels if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation or prosecution" of the offense. The commentary to § 3C1.1 lists the "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or

12

juror, directly or indirectly, or attempting to do so" as an example of conduct to which the enhancement applied. U.S.S.G. § 3C1.1, cmt. 4(a). We will uphold the enhancement so long as the sentencing court's findings include the "factual predicate for a finding" that a defendant acted willfully. See United States v. Castner, 50 F.3d 1267, 1279 (4th Cir. 1995). Finally, the government satisfies its burden if it can establish a defendant willfully obstructed justice by a preponderance of the evidence. United States v. Kuilin, 360 F.3d 456, 460 (4th Cir. 2004).

Here, in applying the enhancement, the district court reasoned:

> [T]he evidence that I heard and which everyone here agrees that Mr. Royal did say in lockup is, "Do the right thing and don't snitch." And looking at all of the evidence associated in this case and the fact that the person who testified, . . . , indicated that she was afraid and nervous, and I heard that clearly, that is a bases [sic] to obstruct the processes of the court and to influence testimony, and clearly obstruction of justice is applicable.

J.A. 367. The district court's findings are sufficient to sustain the adjustment. Even if we were to hold that Royal's "don't snitch" comment was insufficient, Royal also prompted Melissa to "lie about her age" to law enforcement and to tell the police that he had "no idea as to her actual age" and to place the blame on a co-conspirator. J.A. 210-211. Melissa followed Royal's instructions and did, in fact, lie to law enforcement when initially questioned. This instruction to

13

Melissa provides an additional reason to affirm the adjustment. See United States v. Garnett, 243 F.3d 824, 830 (4th Cir. 2001) (court can affirm a sentence on the basis of any conduct in the record that supports an increase in the offense level); United States v. Ashers, 968 F.2d 411, 414 (4th Cir. 1992) (if one basis for application of an enhancement is erroneous, enhancement may be affirmed based on correctly determined alternative basis). Accordingly, the district court did not err in increasing Royal's offense level by two levels for obstruction of justice pursuant to U.S.S.G. § 3C1.1.

D.

Next, Royal challenges the district court's application of the leader or organizer role adjustment pursuant to U.S.S.G. § 3B1.1(a), which directs a sentencing court to add four offense levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants." Guideline §3B1.1 does not apply to a defendant who merely organizes or supervises a criminal activity executed without the aid of others, but must involve an exercise of some degree of control over others for the commission of the offense. In making this determination, the commentary instructs the sentencing court to consider the exercise of decision-making authority; the nature of the participation in the commission of the offense; the recruitment of accomplices; the claimed right to a larger

14

share of the fruits of the crime; the degree of participation in planning the offense; the nature and scope of the illegal activity; and the degree of control exercised over others. U.S.S.G. § 3B1.1 (commentary).

Here, the record reflects that there were at least seven people involved in the drug conspiracy: Royal, Crystal Brown, Brown's cousin Chris, Bentolila, Tibbs, Thomas King, and Paul Green. In addition, the record clearly supports the district court's conclusion that Royal not only exercised control over all of the participants, but he organized the conspiracy. While Royal argues that "there was no other evidence . . that the drug conspiracy would be considered . . . extensive" and that the district court remarked that Royal "was not the biggest drug dealer that I've seen," these facts are irrelevant to the conclusion that Royal was the leader of a drug distribution conspiracy involving five or more people. As such, the district court did not err in enhancing Royal's offense level pursuant to U.S.S.G. § 3B1.1(a).

### E.

Finally, Royal alleges that the district court violated his Fifth and Sixth Amendment rights in applying enhancements based on conduct he was not charged with, did not admit to, and was not supported by proof beyond a reasonable doubt as determined by a jury. This argument is without merit.

15

In United States v. Grubbs, 585 F.3d 793 (4th Cir. 2009), cert. denied, 130 S. Ct. 1923 (2010), we recently rejected the same claim. "[A] sentencing court may consider uncharged and acquitted conduct in determining a sentence, as long as that conduct is proven by a preponderance of the evidence." Id. at 799 (quoting United States v. Watters, 519 U.S. 148, 157 (1997); United States v. Jones, 31 F.3d 1304, 1316 (4th Cir. 1994). The panel concluded that Booker "did not change the sentencing court's ability to consider" such conduct. Id. (citing United States v. Benkahla, 530 F. 3d 400 (4th Cir. 2008) ("Sentencing judges may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as that Guidelines sentence is treated as advisory and falls within the statutory maximum authorized by the jury's verdict."). As such, we concluded that no Sixth Amendment impediment existed because the "judge could disregard the Guidelines and apply the same sentence . . . in the absence of the special facts." Id. at 799. The "point is thus that the Guidelines must be advisory, not that judges may find no facts." Id. Fatal to Royal's challenge, we also concluded that "the due process clause of the Fifth Amendment does not require the district court to find uncharged conduct by a heightened standard of proof before using it as a basis for determining a defendant's sentence." Id. at 802.

16

III.

For the foregoing reasons, Royal's sentence is

AFFIRMED.