PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                        No. 08-5078

JAIME ALEJANDRO ALVARADO PEREZ,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Roger W. Titus, District Judge.
(8:07-cr-00435-RWT-1)

Argued: May 11, 2010

Decided: July 1, 2010

Before GREGORY and SHEDD, Circuit Judges, and
Arthur L. ALARCÓN, Senior Circuit Judge of the United
States Court of Appeals for the Ninth Circuit,
sitting by designation.

Affirmed by published opinion. Senior Judge Alarcón wrote
the opinion, in which Judge Gregory joined. Judge Shedd
wrote a separate concurring opinion.

## COUNSEL

**ARGUED**: Eun Kyung Cho, HALL & CHO, PC, Rockville,
Maryland, for Appellant. Michael Joseph Leotta, OFFICE OF

THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Solette Magnelli, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

---

## OPINION

ALARCÓN, Senior Circuit Judge:

Jaime Alejandro Alvarado Perez ("Alvarado-Perez") entered a conditional plea to a one-count felony indictment of unlawful possession of a firearm and ammunition by a person previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). He appeals from the district court's sentencing decision on two grounds: (1) the district court clearly erred by applying three sentencing enhancements pursuant to the advisory United States Sentencing Guidelines §§ 2K2.1(b)(6), 5K2.3, and 5K2.7 relating to Alvarado-Perez's conduct of taking a loaded firearm inside a "backpack"[1] into the office of a probation officer, and (2) the district court's 96-month sentence is unreasonable in light of 18 U.S.C. § 3553(a).

We affirm because we conclude that the district court did not err in applying the sentencing enhancements. We also have determined that the district court did not abuse its discretion in sentencing Alvarado-Perez to 96 months of imprisonment.

---

[1]The parties refer to it as a "backpack." The photograph of the object introduced into evidence shows that it was a cloth bag with a draw string that could be carried on a person's back.

# I

## A

The facts of this case are not in dispute. In their plea agreement, the parties stipulated that the United States would prove the following facts beyond a reasonable doubt:

> The defendant, **JAIME ALEJANDRO ALVARADO-PEREZ**, entered the United States from his native country of El Salvador on December 21, 2001 as a non-immigrant child of a legal permanent resident. This status was valid until December 20, 2003, after which the defendant's status became that of an illegal alien. Since that date, the defendant has been in the United States and has not filed any applications with the U.S. Citizenship and Immigration Services. His status, to date, remains that of an illegal alien.
>
> On June 30, 2006, **[ALVARADO-]PEREZ** was convicted in the Circuit Court for Montgomery County, Maryland on the offense of Third Degree Sexual Offense, which involves the use or threatened use of force as an element. This offense was committed against a minor. [Alvarado-]Perez was sentenced to three years' imprisonment and two years of supervised release. His civil rights have not been restored.
>
> In September of 2007, agents from Immigration and Customs Enforcement ("ICE") became aware that **[ALVARADO-]PEREZ** was illegally within the United States. On September 6, 2007, **[ALVARADO-]PEREZ** visited the Montgomery County Parole and Probation Office for his regular meeting with his probation officer. On August 23, 2007, that probation officer had visited **[ALVARADO-]PEREZ** and had told him that

because he had missed several appointments and had failed to maintain the conditions of his probation, that [he] was on the verge of violating his probation that would result in his re-incarceration. When **[ALVARADO-]PEREZ** arrived for his September 6th meeting, ICE Agents approached him. **[ALVARADO-]PEREZ** acknowledged his identity and admitted that his visa from 2001 expired. ICE agents then arrested **[ALVARADO-]PEREZ** for immigration violations. During a search incident to this arrest, agents found a .38 caliber revolver, Model MR 102, serial number 09644, and 16 rounds of Winchester .38 caliber cartridges in the bag that the defendant was wearing when he entered the probation office. The firearm was loaded. The firearm and ammunition were manufactured outside of Maryland and crossed state lines, in and affecting interstate commerce. **[ALVARADO-]PEREZ** knowingly possessed the firearm and ammunition and brought it to the probation office.

**[ALVARADO-]PEREZ** was subsequently advised of his Miranda rights, which he waived. During this interview, **[ALVARADO-]PEREZ** stated, among other things, that: (1) he had arrived in the United States on December 21, 2001 with a visa that had since expired; (2) he had brought the firearm with him to his probation meeting on that date; (3) he did not need the gun for protection against gang members; and (4) he was an MS-13 gang member in El Salvador, as reflected by his tattoos.

(Plea Agreement 9.)

## B

On September 26, 2007, a federal grand jury returned an indictment charging Alvarado-Perez with one count of unlaw-

ful possession of a firearm and ammunition by a person previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).[2] Alvarado-Perez pled guilty to the one-count indictment. Section 924(a)(2) provides that "[w]hoever knowingly violates . . . section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." 18 U.S.C. § 922(a)(2). At Alvarado-Perez's sentencing hearing on October 17, 2008, the district court noted that the presentence report provided for a base offense level of 20 and a criminal history category II. After a 3-point reduction for acceptance of responsibility, Alvarado-Perez's total base offense level was 17.

The district court imposed three sentencing enhancements, however, which increased Alvarado-Perez's offense level to 25. First, the district court imposed a 4-point sentencing enhancement pursuant to U.S.S.G. § 2K2.1(b)(6) based on its determination that Alvarado-Perez's conduct of carrying a loaded firearm in a backpack at least facilitated or had the potential of facilitating the crime of reckless endangerment. Second, the district court imposed a 2-point sentencing enhancement pursuant to U.S.S.G. § 5K2.3 based on its determination that Alvarado-Perez's conduct of bringing a loaded firearm into the office of a probation officer caused the officer psychological injury. Finally, the district court imposed a 2-point sentencing enhancement pursuant to U.S.S.G. § 5K2.7 based on its determination that Alvarado-Perez's conduct of bringing a loaded firearm into the probation officer's office also caused a significant disruption of a government function. With a new base offense level of 25 and a criminal history category II, Alvarado-Perez's Sentencing Guidelines range was 63 to 78 months.

After considering the 18 U.S.C. § 3553(a) factors, the dis-

---

[2]The indictment also charged Alvarado-Perez with one count of possession of a firearm and ammunition by an alien under 18 U.S.C. § 922(g)(5). That count was dismissed on the motion of the Government.

trict court imposed an upward variance and sentenced Alvarado-Perez to 96 months imprisonment and 3 years supervised released. Alvarado-Perez filed this timely appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II

## A

Alvarado-Perez contends that the district court erred in applying an enhancement for facilitating or potentially facilitating the crime of reckless endangerment under U.S.S.G. § 2K2.1(b)(6). Alvarado-Perez argues that "[b]ased upon the facts admitted [ ] and agreed upon by [the parties], the enhancement does not apply." (Appellant's Br. 13.)

"In assessing a challenge to a sentencing court's application of the Guidelines, we review the court's factual findings for clear error and its legal conclusions de novo." *United States v. Allen*, 446 F.3d 522, 527 (4th Cir. 2006) (citing *United States v. Ebersole*, 411 F.3d 517, 536-36 (4th Cir. 2005)).

Section 2K2.1(b)(6) of the Sentencing Guidelines provides:

> If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels. If the resulting offense level is less than level 18, increase to level 18.

U.S.S.G. § 2K2.1(b)(6).

In interpreting § 2K2.1(b)(6), this Court has previously held that "a firearm is possessed 'in connection with' another felony offense if the firearm 'facilitated, or had the potential

of facilitating' the other offense." *United v. Jenkins*, 566 F.3d 160, 162 (4th Cir. 2009) (quoting U.S.S.G. § 2K2.1). "This requirement is satisfied if the firearm 'ha[d] some purpose or effect' with respect to the other offense,[ ] including if the firearm 'was present for protection or to embolden the actor.'" *Id.* (quoting *United States v. Blount*, 337 F.3d 404, 411 (4th Cir. 2003) and *United States v. Lipford*, 203 F.3d 259, 266 (4th Cir. 2000)).

The term "another felony" is defined in § 2K2.1(b)(6) as "any federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1(b)(6) cmt. n. 14(C).

Section 3-204 of the Maryland Code of Criminal Law provides as follows:

> (a) [a] person may *not* recklessly:
>
> (1) engage in conduct that creates a substantial risk of death or serious physical injury to another; or
>
> (2) discharge a firearm from a motor vehicle in a manner that creates a substantial risk of death or serious physical injury to another.
>
> (b) A person who violates this section is guilty of the misdemeanor of reckless endangerment and on conviction is subject to imprisonment not exceeding 5 years or a fine not exceeding $5,000 or both.

Md. Code Ann. Crim. Law § 3-204(a) (emphasis added).[3]

---

[3]Although, under Maryland law, a person who is guilty of reckless endangerment is guilty of a misdemeanor, *Boyer v. State*, 107 Md.App. 32, 39 (Md. Ct. Spec. App. 1995), the offense constitutes a felony under the Guidelines because it is punishable by imprisonment for a term exceeding one year. U.S.S.G. § 2K2.1(b)(6) cmt. n. 14(C).

"Maryland's reckless endangerment statute is aimed at deterring the commission of potentially harmful conduct before an injury or death occurs. As a consequence, a defendant may be guilty of reckless endangerment even where he has caused no injury." *Boyer*, 107 Md.App. at 39. "Accordingly, guilt under the statute does not depend upon whether the accused intended that his reckless conduct create a substantial risk of death or serious injury to another; rather, the trier of fact must determine whether the accused's conduct, when viewed objectively, was so reckless as to constitute a gross departure from the standard of conduct that a law-abiding person would observe." *Id.* (internal quotation marks omitted).

The district court found that Alvarado-Perez recklessly endangered other persons. It determined that Alvarado-Perez's conduct of carrying a loaded firearm in his backpack was a gross departure from the standard of conduct that a law-abiding person would observe and that it created a substantial risk of death or serious physical injury to another. The district court reasoned as follows:

> Anybody who gets on a public transportation bus, and who carries with him a fully loaded weapon with no safety, and a lot of bullets in a bag that can be jostled and easily make the trigger go off is clearly endangering the public and doing so recklessly.
>
> . . .
>
> A law-biding person would not want to get on a public bus with a gun, much less with a gun fully loaded, no safety, in a bag that, with the slightest agitation, could cause death or serious bodily harm on that bus. . . . I conclude that it certainly meets the level of reckless endangerment.

Based upon this record, we agree with the district court that carrying a fully loaded handgun that has no safety mechanism

in a cloth bag constitutes reckless endangerment. The district court did not clearly err in determining that Alvarado-Perez's conduct constituted reckless endangerment under Maryland law.

Alvarado-Perez further maintains that the district court's finding that he was guilty of reckless endangerment was based solely on the court's determination that "the firearm did not have a safety." (Appellant's Br. 16.) Alvarado-Perez argues that "[t]he district court relied heavily and repeatedly on [this] fact [which was] not admitted by [him], nor proven to a jury." (*Id.*)

This Court has previously held that:

> [s]entencing judges may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as that Guidelines sentence is treated as advisory and falls within the statutory maximum authorized . . . Indeed, 'many individual Guidelines apply higher sentences in the presence of *special facts'* and '[i]n many cases, the sentencing judge, not the jury, will determine the existence of those facts.' *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 2465, 168 L.Ed.2d 203 (2007). That 'does not violate the Sixth Amendment,' however, because '[a]s far as the law is concerned, the judge could disregard the Guidelines and apply the same sentence . . . in the absence of the special facts.' . . . The point is thus that the Guidelines must be advisory, not that judges may find no facts.

*United States v. Benkahla*, 530 F.3d 300, 312 (4th Cir. 2008). Accordingly, the district court was entitled to consider relevant conduct that was not admitted by Alvarado-Perez in determining an appropriate sentencing decision. The following colloquy demonstrates that Alvarado-Perez's counsel was mindful of this principle at sentencing:

> **THE COURT:** I'm entitled to consider conduct other than the conduct involved in offense of conviction, am I not?
>
> **MS. CHO [defense counsel]:** I'm sorry, your Honor?
>
> **The Court:** I'm entitled to consider conduct including uncharged and acquitted conduct of the defendant that is not part of the offense of conviction under the sentencing guidelines, am I not?
>
> **MS. CHO [defense counsel]:** Absolutely your honor.

Whether or not Alvarado-Perez admitted that the revolver did not have a safety mechanism, or whether this fact was presented to a jury, is not controlling because the evidence presented by the Government was sufficient to meet the preponderance of the evidence standard. *See Benkahla*, 530 F.3d at 312. At the sentencing hearing, ICE Special Agent Sergeant Paul Morris testified that the firearm found in Alvarado-Perez's backpack did not have a safety and that it could have fired on its own. He testified as follows:

> **THE COURT:** Was the safety on the gun on or off?
>
> **WITNESS: [Agent Morris]:** I do not believe the gun had a safety, sir. It was a revolver.
>
> **THE COURT:** So there would be no safety? In other words, it could fire —
>
> **WITNESS: [Agent Morris]:** Correct.
>
> **THE COURT:** — without any additional effort required?

**WITNESS: [Agent Morris]:** Correct.

Because the district court's finding that Alvarado-Perez's conduct of carrying a loaded firearm in a backpack at least facilitated or had the potential of facilitating the crime of reckless endangerment was not clearly erroneous, the court did not err in applying the 4-point sentencing enhancement pursuant to U.S.S.G. § 2K2.1(b)(6).

B

Alvarado-Perez contends that the district court erred in applying the enhancement under U.S.S.G. § 5K2.3. Section 5K2.3 provides:

> If a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the severity of the psychological injury and the extent to which the injury was intended or knowingly risked.

U.S.S.G. § 5K2.3. Specifically, Alvarado-Perez argues that the distress caused to Probation Officer Donna Billeter, which caused her to wear a bullet proof vest and request a job transfer, was based on inaccurate information.

The district court imposed this enhancement because it found that Alvarado-Perez's conduct in bringing a loaded firearm into Officer Billeter's office caused her psychological injury. Officer Billeter's testimony that the fact that Alvarado-Perez brought a gun into Billeter's office caused her to wear a bullet proof vest and request a transfer from a job that she had performed for 25 years is undisputed.

The district court's determination that Alvarado-Perez's action of bringing a firearm to Billeter's office caused her

serious psychological injury was not clearly erroneous. Accordingly, the district court did not err in applying the 2-point sentencing enhancement pursuant to U.S.S.G. § 5K2.3.

C

Alvarado-Perez contends that the district court erred in applying the enhancement under U.S.S.G. § 5K2.7. Section 5K2.7 of the advisory Sentencing Guidelines, in pertinent part, provides:

> If the defendant's conduct resulted in a significant disruption of a governmental function, the court may increase the sentence above the authorized guideline range to reflect the nature and extent of the disruption and the importance of the governmental function affected. Departure from the guidelines ordinarily would not be justified when the offense of conviction is an offense such as bribery or obstruction of justice[.]

U.S.S.G. § 5K2.7.

Alvarado-Perez contends that the district court failed to indicate what precautions the probation office took to justify an enhancement for disruption of a governmental function. The record supports the district court's finding that the probation office was significantly disrupted by Alvarado-Perez's conduct of bringing a firearm into the probation office. The probation office transferred Officer Billeter to another position and it posted a new sign stating its policy against bringing weapons into the office. As the district court noted, Alvarado-Perez's actions caused the probation office to

> come to the realization that they can no longer assume that those who are on probation are going to be reasonably well-behaved when [they are] in [the probation] office.

> It[ ] required [probation officers] to post new sign-age, required them to give additional notifications, additional precautions, and . . . it certainly disrupted the operations of this office.

The district court's determination that Alvarado-Perez's actions had caused a significant disruption of a governmental function was not clearly erroneous.

## III

Alvarado-Perez maintains that the district court abused its discretion because his sentence of 96 months imprisonment is unreasonable. He claims that the sentence is "greater than necessary to conform with the sentencing goals of 18 U.S.C. § 3553(a)." (Appellant's Br. 25.) Alvarado-Perez contends that the district court incorrectly assumed that the firearm was fully loaded, that the failure to have a safety heightened the normal threat posed by the firearm, and gave undue weight to uncharged allegations of general criminal activity. (*Id.* at 25-26.) In addition, Alvarado-Perez asserts that his sentence of 96 months imprisonment provides no deterrence because he has never served a sentence of this length. The length of his previous sentence was 44 days. (*Id.* at 27.)

In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court instructed that

> [r]egardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard. It must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-

including an explanation for any deviation from the Guidelines range. Assuming, that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness. But if the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

Practical considerations also underline this legal principle. The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record. The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court. Moreover, district courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines sentences than the appellate courts do.

*Gall*, 552 U.S. at 51-52 (citing *Rita*, 551 U.S. at 357-58 and *Koon v. United States*, 518 U.S. 81, 98 (1996) (internal quotations omitted)).

Section 3553(a) requires that a sentencing court consider the following factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .

(5) any pertinent policy statement . . .

(6) the need to avoid unwarranted sentence dispari-
ties among defendants with similar records who have
been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of
the offense.

18 U.S.C. § 3553(a).

The district court did not commit a procedural error in
applying § 3553(a). The district court correctly calculated the
Guidelines range and allowed the parties to argue for a sen-
tence they believed to be appropriate. The district court fully
explained its reasoning in consideration of the § 3553(a) fac-
tors. The district court reasoned as follows:

> [T]he conduct involved in this case is fairly unique
> and not just stupid but reckless and outrageous, and
> [ ] therefore a variance sentence is going to be neces-
> sary in my judgment in order to reflect the factors set
> forth in Section 3553.
>
> First of all, the nature and circumstances of the
> offense, which at first glance appears to be a garden
> variety felon in possession of a firearm case, are by
> no means garden variety. This is an extremely seri-
> ous offense which congress has provided for sub-
> stantial possible punishment of up to ten years, and
> ordinarily it is under circumstances quite different
> from this one. In this one, however, the circum-
> stances of the possession by this convicted felon are
> truly not stupid, but outrageous. That one would
> come to the offices of a government agency that is
> required to supervise him because of earlier criminal
> conduct, and to march into that building with a
> loaded weapon which either does not have a safety
> or the safety is off, and with a large supply of addi-
> tional ammunition, is an extremely serious offense

when you take into account the full circumstances relating to this felon's possession of that weapon.

The history and characteristics of this defendant are not helpful to this case. This is a person who wasn't recruited to MS-13 here in the United States but came here as a member already, overstayed his visa, and clearly has been involved in fairly significant and deep involvement with the MS-13 gang as reflected by the tattoos and by the testimony that's been given to me today by the witnesses who I've heard.

This is an especially troublesome gang that endangers the public in a most profound way with a culture that calls for crime as part of its existence, and it is one to be dealt with in the interest of the public severely and harshly. My sentence is required to promote respect for the law. . . .

I'm required to consider the need to protect the public from further crimes of the defendant. This defendant has endangered the public enough. What he's done has been truly outrageous, and the public must be protected from further conduct of this nature.

I'm required to consider the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. I think the most effective manner will be in jail.

I am required to consider the need to avoid unwarranted sentence disparities, and I will attempt to do so, but I must do so with appropriate measurement of the seriousness of this offense.

I am required to consider the need to provide restitution to any victims. And unfortunately, this defendant has no resources, and the — I'm not sure that I could provide adequate restitution to the impact this has had, and that I've already mentioned, on the probation officer.

I am going to impose a variance sentence of 96 months, and I want to state very clearly that whether the guideline recommendation produced a range of 63-78 months, which is what it did produce after I applied the guidelines, or a sentencing range of 41-51 months, which would be the way the probation officer's original calculations had it, or a sentencing range of 27-33 months, which would be without the four level enhancement as provided by the probation officer, not any one of those sentences to me would be sufficient to reflect all of the 3553 factors here.

So if I assume for the moment that this defendant were to prevail on every single argument on every single offense level adjustment and every single departure upward, and that I had in front of me a recommended sentence of 27-33 months, I would impose the exact same sentence. This is a sentence that must be imposed to reflect more accurately all of the factors set forth in Section 3553. That is a sentence that is still well below the statutory maximum in this case. It is 80 percent of a maximum sentence. And if ever were there a case where an argument could be made as has been made by the prosecutor today of seeking the most that congress would authorize, this is one of those cases. But the sentence I've imposed is only 80 percent of that way towards what would be recommended or authorized by congress in its wisdom in enacting this regulation. So I'm imposing a sentence of 96 months in custody.

This Court has held that "the resulting sentence is procedurally reasonable [when] the district court adequately explain[s] its sentence on alternative grounds supporting a variance sentence, by reference to the 18 U.S.C. § 3553(a) factors." *United States v. Grubbs*, 585 F.3d 793, 804 (4th Cir. 2009). "This additional, § 3553(a)-based, explanation of [the] sentence provides independent grounds for a variance sentence and verifies the reasonableness of the district court's sentencing determination." *Id.* at 805. The record shows that the district court adequately explained the basis for Alvarado-Perez's sentence under the § 3553(a) factors apart from the sentencing enhancements.[4]

Alvarado-Perez's argument that a sentence of 96 months is too long to provide adequate deterrence because his previous sentence was only for a duration of 44 days is also meritless. The district court stated that a 96 month sentence was necessary because:

> [A] light sentence under the circumstances of this case, [ ] would utterly undermine the law and would totally fail to afford adequate deterrence to criminal conduct. A sentence by a court occasionally needs to send a message that would deter others, like this defendant, who have cheerfully disregarded their status of convicted felons and do have not only possessed weapons but possessed them in a government building on their way to see a government probation officer. There really must be and will be deterrence to that kind of behavior.

---

[4]Alvarado-Perez argues that the district court gave undue weight to hearsay testimony that he engaged in gang activity. However, this Court previously held that "there is no bar to the use of hearsay at sentencing. 'United States courts have a long history of using reliable hearsay for sentencing. The trial court may properly consider uncorroborated hearsay evidence that the defendant has had an opportunity to rebut or explain.'" *United States v. Love*, 134 F.3d 595, 607 (4th Cir. 1998) (quoting *United States v. Terry*, 916 F.2d 157, 160-61 (4th Cir. 1990)).

The totality of the circumstances demonstrates that Alvarado-Perez's sentence is substantively reasonable. The district court did not abuse its discretion in sentencing Alvarado-Perez to 96 months of imprisonment.

### Conclusion

The sentencing decision of the district court is

*AFFIRMED*.

SHEDD, Circuit Judge, concurring:

Because I agree that the district court did not err in either calculating Perez-Alvarado's advisory guideline range or varying upward from that range, I concur in the majority opinion. I write separately to note that, in my view, the sentence could also be affirmed, as the government urges in its supplemental brief, on the alternate reasoning given by the district court without deciding whether the court erred in its calculation of the advisory guideline range. *See United States v. Keene*, 470 F.3d 1347 (11th Cir. 2006).[1]

As the majority notes, the district court used an advisory sentencing range of 63-78 months in imposing the 96-month variance sentence. To reach this range, the court used several guideline enhancements. However, the court stated that it would impose that sentence even if the sentencing range was 27-33 months, which is what Alvarado-Perez contends is appropriate:

---

[1]Alternate sentences are not completely uncommon. Indeed, in a more limited context, we have previously recommended that district courts impose alternate sentences. *See United States v. Hammoud*, 378 F.3d 426 (4th Cir. 2004) (en banc order holding that the sentencing guidelines are mandatory but recommending that district courts impose alternate sentences treating the guidelines as advisory pending Supreme Court guidance), *vacated*, 543 U.S. 1097 (2005) (for further consideration in light of *United States v. Booker*, 543 U.S. 220 (2005)).

I am going to impose a variance sentence of 96 months, and I want to state very clearly that whether the guideline recommendation produced a range of 63-78 months, which is what it did produce after I applied the guidelines, or a sentencing range of 41-51 months, which would be the way the probation officer's original calculations had it, or a sentencing range of 27-33 months, which would be without the four level enhancement as provided by the probation officer, not any one of those sentences to me would be sufficient to reflect all of the 3553 factors here.

*So if I assume for the moment that this defendant were to prevail on every single argument on every single offense level adjustment and every single departure upward, and that I had in front of me a recommended range of sentence of 27-33 months, I would impose the exact same sentence.* This is a sentence that must be imposed to reflect more accurately all of the factors set forth in Section 3553. That is a sentence that is still well below the statutory maximum in this case. It is 80 percent of a maximum sentence. And if ever were there a case where an argument could be made as has been made by the prosecutor today of seeking the most that [C]ongress would authorize, this is one of those cases. But the sentence I've imposed is only 80 percent of the way towards what would be recommended or authorized by [C]ongress in its wisdom in enacting this legislation. So I'm imposing a sentence of 96 months in custody.

J.A. 233-34 (emphasis added).

In *Keene*, the district court sentenced the defendant using a contested sentencing enhancement, but it also stated that even if the enhancement did not apply it would impose the same sentence. On appeal, the Eleventh Circuit affirmed with-

out deciding the enhancement issue because it found that the alternate sentence was reasonable. The Eleventh Circuit termed its analysis "an assumed error harmlessness inquiry" that has two components: (1) "knowledge that the district court would have reached the same result even if it had decided the guidelines issue the other way," and (2) "a determination that the sentence would be reasonable even if the guidelines issue had been decided in the defendant's favor. . . ." 470 F.3d at 1349. Applying that analysis to the facts before it, the Eleventh Circuit concluded that even if there was any misapplication of the guideline enhancement,

> "the error did not affect the district court's selection of the sentence imposed." Put a little differently, it would make no sense to set aside this reasonable sentence and send the case back to the district court since it has already told us that it would impose exactly the same sentence, a sentence we would be compelled to affirm.

*Id.* at 1350 (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)). *See also United States v. Dean*, 517 F.3d 1224, 1232 (11th Cir. 2008), *cert. denied sub nom. Lopez v. United States*, 129 S. Ct. 2155 (2009) (applying the *Keene* analysis to affirm the variance sentence).

Improper calculation of an advisory guideline range constitutes a procedural error, *Gall v. United States*, 552 U.S. 38, 51 (2007), and "procedural errors at sentencing . . . are routinely subject to harmlessness review," *Puckett v. United States*, 129 S. Ct. 1423, 1432 (2009). Thus, "[i]n evaluating a district court's error in its sentencing calculations, we must determine whether the error was harmless." *United States v. Mehta*, 594 F.3d 277, 283 (4th Cir. 2010). A sentencing calculation error is harmless "if the resulting sentence was not 'longer than that to which [the defendant] would otherwise be subject.'" *Id.* (quoting *United States v. Stokes*, 261 F.3d 496, 499 (4th Cir. 2001)).

I am not aware of any published decision in which we have applied the *Keene* analysis in the precise situation before us: that is, where we have entirely given the benefit of the doubt regarding the appropriate advisory sentencing range to the defendant and then simply decided the reasonableness of an alternate variance sentence from that range.[2] However, such an approach seems entirely consistent with our caselaw.

For example, it is not uncommon for us to assume, without deciding, error in the context of conducting a harmless error analysis. *See, e.g.*, *United States v. Johnson*, 587 F.3d 625, 637 (4th Cir. 2009), *cert. denied sub nom. Martin v. United States*,___ U.S. ___, 78 U.S.L.W. 3611 (2010) ("Martin raises several potential errors that the district court made in admitting the 1980 conviction, but we need not address them. Assuming that the district court erred in admitting the conviction, that error was harmless."); *United States v. Lipford*, 203 F.3d 259, 273 (4th Cir. 2000) ("[W]e need not decide whether the conduct here meets that broad definition because even if we assume, without deciding, that there was error, any such error would be harmless.").

Indeed, we recently did so in a sentencing case. In *United States v. Boulware*, ___ F.3d ___, 2010 Westlaw 1874806 (4th Cir. 2010), the defendant challenged her sentence on appeal, arguing that the district court did not offer sufficient reasons to show that it made an individual assessment of the specific circumstances in her case in light of the relevant § 3553(a) factors. Without deciding whether such an error occurred, we rejected this argument because the alleged error was harmless:

> In light of the strong indications that the district court fully considered Boulware's argument for a

---

[2]*Cf. United States v. Lee*, 321 Fed. Appx. 298, 302 (4th Cir.) (Shedd, J., concurring) (noting that the sentence could have been affirmed under the *Keene* analysis), *cert. denied*, 130 S. Ct. 204 (2009).

below-guidelines sentence, and in light of the weakness of that argument, the notion that having to explain its analysis further might have changed the district court's mind . . . is simply unrealistic in the present case, and remand for resentencing would be a pointless waste of resources. We therefore hold that even assuming that the district court committed procedural error in failing to sufficiently explain the sentence imposed in light of the § 3553(a) factors, any error was harmless.

2010 Westlaw 1874806, at *6.

Moreover, in a slightly different context, we have affirmed a sentence that was erroneously imposed because we concluded that the district court's statement of an alternate sentence rendered the error harmless. *See United States v. Shatley*, 448 F.3d 264 (4th Cir. 2006). We explained in that case:

> Thus, even though the district court did impose a sentence under the Sentencing Guidelines that violated Shatley's Sixth Amendment rights, it announced at the same time that if the Sentencing Guidelines became advisory, it would impose the same sentence. In making that determination, it properly considered the § 3553(a) factors. . . . We take the district court at its word when it stated plainly that it would impose the same sentence under an advisory guideline system. Thus, the error was harmless; to remand this case now in view of these facts would amount to an "empty formality."

448 F.3d at 268 (citation omitted).

We have come close to applying the *Keene* analysis on at least two occasions. For example, in *United States v. Evans*, 526 F.3d 155 (4th Cir.), *cert. denied*, 129 S.Ct. 476 (2008),

the defendant did not challenge the calculation of his advisory sentencing range, but he did challenge the district court's use of a guideline provision to depart upward from the range. Without deciding whether the court erred in its use of the guideline provision, we found the ultimate sentence to be reasonable because the court imposed it by relying on both the guideline provision and, independently, the § 3553(a) factors. We noted: "When, as here, a district court offers two or more independent rationales for its deviation, an appellate court cannot hold the sentence unreasonable if the appellate court finds fault with just *one* of these rationales." 526 F.3d at 165 (emphasis in original). We then concluded: "Accordingly, even assuming the district court erred in applying the Guideline departure provisions, Evans' sentence, which is well-justified by § 3553(a) factors, is reasonable." *Id.*

More recently, in *United States v. Grubbs*, 585 F.3d 793 (4th Cir. 2009), *cert. denied*, 130 S. Ct. 1923 (2010), the defendant argued that the district court committed two procedural errors involving two enhancements used to calculate his guideline range. We rejected the defendant's argument as to the first enhancement, finding it to be proper. However, we noted regarding the second enhancement that the court "may have erred." 585 F.3d at 804. Nonetheless, we affirmed the sentence, finding it to be procedurally reasonable "because the district court adequately explained its sentence on alternative grounds supporting a variance sentence, by reference to the 18 U.S.C. § 3553(a) factors." *Id.*

As the foregoing authorities illustrate, (1) we review procedural sentencing errors (such as guideline range calculations) for harmlessness, (2) we have previously assumed without deciding that sentencing errors occurred in affirming sentences under a harmless error analysis, and (3) we have accepted a district court's statement of an alternate sentence as a basis to conclude that a sentencing error was harmless. Taken together, these analytical approaches form the *Keene* "assumed error harmlessness" analysis.

Applying that analysis to this case, we (1) initially give Alvarado-Perez the benefit of the doubt and assume (without deciding) that he is correct that the sentencing range is 27-33 months and (2) proceed to decide the question of whether a variance from that range to 96 months is reasonable. Based on the reasons stated by the district court, and in light of our deferential standard of review, I believe that the variance from 27-33 months to 96 months is reasonable. Accordingly, the sentence could be affirmed on this basis without reaching the merits of the claimed guideline calculation errors.