**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 13-4468**

_____

UNITED STATES OF AMERICA,

                Plaintiff – Appellee,

     v.

NERY GUSTAVO RAMOS DUARTE, a/k/a El Diablo,

                Defendant - Appellant.

_____

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Alexander Williams, Jr., District Judge. (8:10-cr-00308-AW-4)

_____

Submitted: July 31, 2014          Decided: August 14, 2014

_____

Before WYNN and FLOYD, Circuit Judges, and DAVIS, Senior Circuit Judge.

_____

Affirmed and remanded by unpublished per curiam opinion.

_____

Matthew G. Kaiser, Justin Dillon, THE KAISER LAW FIRM PLLC, Washington, D.C., for Appellant. Rod J. Rosenstein, United States Attorney, Bonnie S. Greenberg, Andrea L. Smith, Assistant United States Attorneys, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Nery Gustavo Ramos Duarte was found guilty after a jury trial of conspiracy to distribute controlled substances, conspiracy to import controlled substances into the United States, conspiracy to commit money laundering, and conspiracy to smuggle bulk cash. He received a 160-month sentence. On appeal, he challenges several evidentiary issues, the sufficiency of the evidence on all four of his convictions, and the drug quantity attributed to him at sentencing. We affirm the judgment, but remand for correction of a clerical error.

In 2003, Duarte was stopped by Arkansas law enforcement with approximately $1.1 million in cash stashed in a secret compartment in a Chevy Tahoe that he was driving after just having left the company of a well known leader of a significant drug distribution network based out of Guatemala. The leader's name was Napolean Villagran. The evidence at trial also showed that in 2004, Duarte collected money and accepted cars as payment for drug debts to Villagran and transported payments to Villagran in Guatemala. Duarte also delivered messages to co-conspirators Jose Sandoval and Marilyn Navas and other distributors in the United States on Villagran's behalf. In 2006, Duarte negotiated a debt owed to Villagran by Navas and offered her more drugs to sell to cover her debt. Customs

records were introduced that showed that Duarte reentered the United States fifty-eight times over a ten-year period.

I.

Duarte first argues that co-conspirator Marilyn Navas's statements during the recorded phone calls with Diego Paredes and Duarte constituted inadmissible hearsay that was not subject to the co-conspirator exception to the hearsay rule under Rule 801(d)(2)(E) of the Federal Rules of Evidence. Under this rule, "a statement of the defendant's co-conspirator is admissible against the defendant if it was made during the course of and in furtherance of the conspiracy." United States v. Shores, 33 F.3d 438, 442 (4th Cir. 1994) (internal quotation marks omitted). A co-conspirator's statements come in "if the court finds (i) that the defendant and the declarant were involved in a conspiracy with each other at the time the statement was made; and (ii) that the statement was made in furtherance of that conspiracy." Id. (footnote omitted); see Krulewitch v. United States, 336 U.S. 440, 442 (1949) (holding that an out-of-court statement of one conspirator may be admitted against his fellow conspirator only if the statements were "made pursuant to and in furtherance of objectives of the conspiracy charged").

Duarte correctly argues, and the Government concedes, that the drug conspiracy was over when Navas made the recorded

3

calls because she was at that time cooperating in the investigation. See United States v. Pratt, 239 F.3d 640, 644 (4th Cir. 2001) (error to admit recorded telephone conversations initiated by cooperating co-conspirators because they were not statements made in furtherance of the conspiracy). The Government also concedes that Navas's side of the recorded conversations is inadmissible under Rule 801(d)(2)(E). Both parties acknowledge that Diego Paredes' and Duarte's portions of the conversation would be admissible as opposing party's statements under Fed. R. Evid. 801(d)(2)(A).

We conclude that, even if Navas's recorded statements were not made in furtherance of the conspiracy as required by Rule 801(d)(2)(E), or otherwise admissible, the admission of the transcripts of the phone calls was harmless. See United States v. Graham, 711 F.3d 445, 453 (4th Cir. 2013) ("The incorrect admission of a statement under the coconspirator statement exclusion from the definition of hearsay is subject to harmless error review."). "Erroneously admitted evidence is harmless if a reviewing court is able to say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." United States v. Johnson, 587 F.3d 625, 637 (4th Cir. 2009) (internal quotation marks omitted). The contested recorded conversations were brief, conducted partly in

4

code, and most importantly, were supplemented by the live testimony of both Sandoval and Navas. Sandoval's and Navas's live testimony was more substantial than the recordings. There was further evidence presented by the Government with expert testimony on money laundering that corroborated that Duarte would be aware of both the drug distribution and money laundering schemes. And finally, there was uncontradicted evidence that Duarte transported $1.1 million hidden in a secret compartment in a vehicle that Duarte received at a residence where Duarte interacted with co-conspirators in the drug distribution network, including the known leader of the organization. We therefore conclude that the admission of the recorded conversations, although erroneous, was harmless error.

## II.

Duarte challenges the district court's decision to permit expert testimony on money laundering both as to the qualification of the expert and the need for the testimony, ultimately contending that the expert acted as a summary witness. The district court's decision whether to admit expert testimony is reviewed for abuse of discretion. F.C. Wheat Mar. Corp. v. United States, 663 F.3d 714, 723 (4th Cir. 2011). The Government called William DeSantis, an Internal Revenue Service (IRS) special agent, as an expert in money laundering. Although the general rule is that testimony drawing legal conclusions

should be excluded "when the legal regime is complex and the judge determines that the witness' testimony would be helpful in explaining it to the jury, the testimony may be admitted." United States v. Offill, 666 F.3d 168, 175 (4th Cir. 2011).

Here, the prosecution involved a complicated drug distribution network spanning Guatemala and the United States. The organization used a variety of methods to return the cash proceeds to Guatemala. We conclude that the district court's findings that the testimony would be helpful and DeSantis's experience was sufficient to qualify him as an expert were not an abuse of discretion.

III.

Next, Duarte asserts that, had he been permitted to thoroughly cross-examine the cooperating witnesses Navas and Sandoval concerning the penalties they would have faced if they had not cooperated, he would have more completely demonstrated their motivation to provide information and trial testimony adverse to him. Though the court did not allow detailed questioning regarding the possible sentences the witnesses faced, the court did permit counsel to question the witnesses as to whether they had secured a favorable bargain by assisting the Government, or whether the Government had foregone criminal prosecution in exchange for their testimony.

A district court's decision to limit cross-examination is reviewed for abuse of discretion. United States v. Scheetz, 293 F.3d 175, 184 (4th Cir. 2002). Under the Confrontation Clause, a defendant has the right to cross-examine witnesses who are cooperating with the Government about potential sources of bias. United States v. Cropp, 127 F.3d 354, 358 (4th Cir. 1997). However, the trial court retains the discretion to place reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion, repetition, or relevance. Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986). We have "upheld restricting cross-examination to the minimum and maximum penalties the cooperating government witness was facing, whether the cooperating government witness was testifying to gain a reduced sentence, and the terms of his plea agreement concerning a downward departure." Scheetz, 293 F.3d at 184 (citing United States v. Ambers, 85 F.3d 173, 176-77 (4th Cir. 1996)). An improper denial of an opportunity to examine a witness for bias is subject to harmless error review. United States v. Turner, 198 F.3d 425, 430-31 (4th Cir. 1999).

The record plainly reveals that, on cross-examination, Duarte illustrated that the Government's witnesses had motive to present adverse testimony or to lie. Restricting counsel from delving into the particular details of the sentences each

7

witness potentially—but did not actually—face was an appropriate discretionary limitation. To have allowed further questioning on this issue would have simply been cumulative and repetitive. Therefore, the district court did not abuse its discretion in imposing this limitation. Scheetz, 293 F.3d at 185 (finding district court did not abuse its discretion in limiting defense counsel from questioning cooperating witnesses regarding their Sentencing Guidelines ranges).

IV.

The next evidentiary issue Duarte raises is the admission of Navas's testimony that in a recorded telephone conversation the person that she referred to as "Diablo" was Duarte. Duarte contends that the alias of Diablo had no evidentiary value, that it did not connect him to any piece of evidence in the case, and the Government did not prove that it was Duarte's alias; therefore, he claims the nickname should have been excluded. The Government argues that Navas was only questioned about the name to identify that she was speaking with Duarte and that counsel did not make a timely objection to the identification. We ordinarily review a district court's decision to admit evidence for abuse of discretion. See United States v. Medford, 661 F.3d 746, 751 (4th Cir. 2011). With respect to the admission of uncontested evidence, the decision of the district court is reviewed only for plain error. United

8

States v. Brewer, 1 F.3d 1430, 1434 (4th Cir. 1993).[*]  We conclude the district court did not commit plain error in admitting the uncontested evidence identifying that Navas was referring to Duarte when she called him Diablo.

V.

Duarte argues that the cumulative effect of the challenged district court evidentiary ruling errors deprived him of a fair trial and requires reversal.  "Pursuant to the cumulative error doctrine, the cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." United States v. Hager, 721 F.3d 167, 204 (4th Cir. 2013) (citations omitted), cert. denied, 134 S. Ct. 1936 (2014). Generally, if a court "determine[s] . . . that none of [a defendant's] claims warrant reversal individually," it will "decline to employ the unusual remedy of reversing for cumulative error." United States v. Fields, 483 F.3d 313, 362 (5th Cir. 2007).  In Hager, the court concluded that the harmless errors present "were not widespread of prejudicial enough to have fatally infected [the defendant's] trial or sentencing hearing."  561 F.3d at 204.  The same situation exists here.  Although there was one error in admitting Navas's

---

[*] Duarte did not object below.

9

recorded telephone conversations after she began cooperating in the investigation, we determined it to be harmless. The record does not demonstrate that there were other harmless errors present that fatally infected the trial. We will not reverse the convictions for cumulative error.

VI.

Duarte argues that the Government failed to adduce sufficient evidence to support his convictions. "A defendant challenging the sufficiency of the evidence . . . bears a heavy burden." United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (internal quotation marks omitted). The jury verdict must be sustained when "there is substantial evidence in the record, when viewed in the light most favorable to the government." United States v. Jaensch, 665 F.3d 83, 93 (4th Cir. 2011) (internal quotation marks omitted). "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Id. (alteration and internal quotation marks omitted).

To obtain a conviction for conspiracy to possess with the intent to distribute a controlled substance, "the Government must prove the following essential elements: (1) an agreement between two or more persons to engage in conduct that violates a federal drug law; (2) the defendant's knowledge of the

10

conspiracy; and (3) the defendant's knowing and voluntary participation in the conspiracy." United States v. Green, 599 F.3d 360, 367 (4th Cir. 2010). A defendant may be convicted of conspiracy without knowing all of its details, as long as he enters the conspiracy understanding that it is unlawful and willfully joins in the plan at least once. United States v. Burgos, 94 F.3d 849, 858 (4th Cir. 1996) (en banc). "[T]he fact that a conspiracy is loosely-knit, haphazard, or ill-conceived does not render it any less a conspiracy—or any less unlawful." Id. The court reverses for insufficient evidence only in "the rare case where the prosecution's failure is clear." Beidler, 110 F.3d at 1067 (internal quotation marks omitted). We have reviewed the evidence and find that, viewing the evidence in the light most favorable to the Government, substantial evidence supports all four counts of conviction.

## VII.

Finally, Duarte argues that the district court erred in attributing sixty-four kilograms of cocaine to him for purposes of calculating the Sentencing Guidelines range based on the amount of cash found in the Chevy Tahoe. The Government contends that the court properly attributed the total amount of cash in the Tahoe and converted it to the quantity of drugs associated with the amount.

11

"[T]he government must prove the drug quantity attributable to a particular defendant by a preponderance of the evidence." United States v. Bell, 667 F.3d 431, 441 (4th Cir. 2011). We review the district court's calculation of the quantity of drugs attributable to a defendant for sentencing purposes for clear error. United States v. Crawford, 734 F.3d 339, 342 (4th Cir. 2013), cert. denied, 134 S. Ct. 1528 (2014); see also United States v. Perez, 609 F.3d 609, 612 (4th Cir. 2010) (when assessing a challenge to the district court's application of the Guidelines, this court reviews factual findings for clear error and legal conclusions de novo). Under this standard, we will reverse the district court's finding only if it is "left with the definite and firm conviction that a mistake has been committed." Crawford, 734 F.3d at 342 (internal quotation marks and citation omitted).

When determining facts relevant to sentencing, such as approximated drug quantity, courts are allowed to "'consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.'" Crawford, 734 F.3d at 342 (quoting U.S. Sentencing Guidelines Manual § 6A1.3(a) (2010). "Where there is no drug seizure . . . the sentencing judge shall approximate the quantity of the controlled substance. . . . The judge may

12

consider, for example, the price generally obtained for the controlled substance . . . ." USSG § 2D1.1 cmt. n.5.

At sentencing, the district court attributed sixty-three or sixty-four kilograms of cocaine to Duarte. The district court used the seized amount of $1.1 million and, based on the testimony of a cooperating witness, determined that a kilogram of cocaine at the time of the seizure sold for approximately $17,000-$18,000. The district court then converted the money seized into the applicable quantity of drugs, and found the base offense level to be thirty-six under USSG § 2D1.1. In so finding, the district court determined that Duarte had knowledge of the money, and even if the exact amount was not known to Duarte at the time, it was reasonably foreseeable to him. The court also determined that Duarte was more than a mere courier when it denied Duarte's argument that he should receive a lesser role adjustment. The court believed that Duarte "was the eyes and ears of the head guy in Guatemala."

Duarte argues that he should not be accountable for the converted amount of cash, because the Government did not prove that he knew how much cash was secreted in the vehicle, the Government's expert testified that couriers frequently do not know the quantity of money that they are asked to carry, and despite the police surveillance of the Tahoe and Duarte's

13

presence around it, the Government did not present testimony that Duarte ever looked in the compartment prior to leaving with the vehicle.

The court followed the procedure outlined in the Guidelines when there is no drug seizure. See United States v. Kiulin, 360 F.3d 456, 461 (4th Cir. 2004) (district court did not clearly err in calculating drug quantity by converting cash to its drug equivalent). Further, "actual knowledge of the type or quantity of contraband is not critical to the drug quantity determination." United States v. Fullilove, 388 F.3d 104, 108 (4th Cir. 2004). Even if the Government did not prove actual knowledge, the evidence in the record demonstrated that sixty-three to sixty-four kilograms of cocaine was reasonably foreseeable considering the scope of the organization and the amount of money that Duarte was aware of flowing back to Guatemala. Therefore, there was no clear error.

Accordingly, we affirm the judgment but remand to the district court for the limited purpose of correcting a clerical error. In its written judgment, the district court erroneously lists the sentence for count four to run consecutively to the sentences for counts one, two, and three. However, the clear oral pronouncement at sentencing indicated all counts are to run concurrently. Where there is a conflict between a district court's written judgment and its oral pronouncement of the

sentence, the oral sentence controls. <u>United States v. Osborne</u>, 345 F.3d 281, 283 n.1 (4th Cir. 2003) (citing <u>United States v. Morse</u>, 344 F.2d 27, 30 n.1 (4th Cir. 1965)). The remedy for such a conflict is to remand to the district court with instructions to correct the written judgment to conform to the oral sentence. <u>Morse</u>, 344 F.2d at 30-31 & n.1. For the foregoing reasons, we affirm the judgment but remand with instructions to correct the written judgment to reflect the district court's oral pronouncement of Duarte's sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

<u>AFFIRMED AND REMANDED</u>